# MARYLAND REPORTS.

## JUNE TERM, A. D., 1853.

JAMES H. CASSILLY and wife, FRANCIS J. MEYER
and THOMAS PATTON, and wife, *vs.* ANDREW
and JOS. MEYER, Exc'rs of ANDREW MEYER.

A citizen of Ohio executed his will there, and died leaving real and personal
estate in Maryland, and also five children, all residents of Ohio, two of
whom he made his executors. Three of these children filed a petition in
the orphans court of Baltimore city, where ancillary letters of administra-
tion had been granted, against the executors, alleging payment of debts,
legacies, &c., and praying for an account of all the assets in this State and
distribution thereof here. The executors answered, admitting the facts,
but insisting, among other things, that the distribution belongs exclusively
to the courts of Ohio. HELD:

That the courts of this State are *not bound* to transfer the assets to Ohio for
distribution there, but it is a matter of judicial discretion with them to do
so, or to distribute them here, that discretion to be exercised according to
the circumstances of the case.

Under such discretion the assets may be distributed by the court granting the
ancillary administration, where the legatees or distributees reside within
the jurisdiction of such court, or when they seek their remedy there.

In this case all the parties interested in the assets being before the court in
this State, and no circumstance showing any particular propriety or neces-
sity for transferring the property to Ohio being presented, but, by so doing,
further delay and expense would be incurred, it was HELD, that distribu-
tion should be made here.

A testator directed certain "real estate to remain as at present as long as the
law will allow," the rent to be divided equally among his children and their
legal representatives, and his "bank stock also to remain unsold and the
dividends divided in the same manner, and any money" he might "have
at interest, the interest to be divided in the same manner, and the principal,
as fast as the same may be paid, to be reinvested, and the interest divided
as aforesaid." HELD:

1      v.4

That by this devise the stock itself and the principal of the debts passed to the devisees; the direction that the one should remain unsold, and the other be reinvested as it might be received, cannot prevent the children from now claiming the principal.

A life estate in a chattel may be given to one, and the same, with its increase, be limited over to another, but this can only be done by express words or necessary implication.

The gift of the produce of a fund without limit as to time, is a gift of the fund, and the legatee takes a vested interest.

A devise of the *rents and profits* of land is equivalent to a devise of the land itself, and will carry the legal as well as beneficial interest therein.

APPEAL from the Orphans Court of Baltimore city.

This appeal was taken from an order of the orphans court, dismissing the petition of the appellants for an account and distribution of certain assets of the estate of Andrew Meyer, deceased, in this State. The facts of the case are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*T. P. Scott* for the appellants.

1st. The testator was a resident of Ohio, and the will was made there, though he had real and personal estate in Maryland. The will of the testator is the law governing the courts in the settlement of the estate. He had the right to direct that all his estate should be divided where he chose. In this case he has directed a part to be sold and invested in Ohio, and left the other to be distributed here—the bank stock to remain unsold, and the income arising therefrom to be divided. The Frederick street property has been sold and taken to Ohio, to be there invested, the remainder is to be distributed here.

2nd. The executors having taken to Ohio more than the proceeds of the Frederick street property, and enough to secure the annuity to Margaret Hossafross, and all the debts having been paid, there is no reason why distribution of the remaining assets in Maryland should not now be made. The

JUNE TERM, 1853.                                                3

Cassilly and wife, et al., vs. Meyer, et al.

provision of the tenth section of the will have been gratified, $13,000 having been distributed in Ohio, and the distributees have therefore received more than $500 each.

3rd. The devise of the rents, dividends and interest on loans, carries with it the principal of the estate, and entitles the devisees to a distribution of it. 22 *Eng. C. L. Rep.*, 23. 2 *Jarman on Wills*, 534. So much of the will as seeks to prevent the distribution of the estate after the time required by law, is void. 3 *Green's N. J. Rep.*, 436. A devise over of personal property must be by express words or necessary implication. 6 *G. & J.*, 185. This devise would have given the devisees the absolute estate in land, *a fortiori*, will it in personalty.

4th. The will does not create *a trust* in contemplation of the act of 1798, ch. 101, so as to arrest the jurisdiction of the orphans court. The 12th sec. of the 15th sub-ch., gives to the orphans court power, authority and jurisdiction to hear and decree upon all claims and demands between wards and guardians, legatees and distributees, and executors and administrators, in as full and ample a manner as the court of chancery may. See also sub-ch. 14, sec. 12; sub-ch. 12, sec. 16; and sub-ch. 15, sec. 20.

5th. The orphans court of Baltimore city had jurisdiction and authority to make distribution, notwithstanding the fact that the testator, the executors and the petitioners were all of them non-residents of Maryland, and citizens of Ohio, the parties to this suit being in Maryland when the petition was filed, and the defendants having appeared and answered. 2 *G. & J.*, 506, 507. 4 *G. & J.*, 340. 5 *G. & J.*, 484, 488. 1 *Story's Conflict of Laws*, secs. 513, 514. 1 *Story's Eq.*, sec. 589. 1 *Mason*, 381, 430. 3 *Pick.*, 128.

*John Nelson* for the appellees.

There are two points in the case:—1st. As to the power of the orphans court of Baltimore city to distribute any portion of the fund. 2nd. Admitting its *jurisdiction*, how far does it extend? to the fund itself or the income from it?

1st. The testator and all the legatees resided in the State of Ohio, and letters testamentary were granted there. There is no case to be found where it has ever been held competent for a foreign jurisdiction to make distribution in a case like this. The general principle is, that the law of the domicil governs the distribution of the decedent's estate. The letters here are letters *pro forma* or auxilliary. The object of granting them is, that when a foreign executor comes into this State he shall not be permitted to take assets away, without first satisfying the claims of creditors residents of this State against them. The fund, after payment of debts, is to be transmitted to the principal administrator in cases of intestacy. 2 *H. & J.*, 191. And the same rule applies to cases of testacy. 2 *Kent's Com.*, 527, 528, *(last Ed.)* 3 *Story's Rep.*, 755, *Grattan vs. Appleton.* The authority in *Story's Conflict of Laws*, 403, 404, 423, 424, makes the distinction as to the right of creditors, legatees or distributees resident *within the country.* See also 2 *Bland*, 488. The will does not give a different law to this case,—it does not direct distribution in Maryland,—it directs distribution *by* the *executors* who lived in Ohio, and it would be a strange interpretation to compel the executors to come here to distribute, and the distributees to come here to receive their money. The parties to receive and the parties to distribute were both in Ohio.

2nd. What amount of distribution is to be made, conceding that there is any? The devise of rents and profits of lands, and the dividends of stocks, does not always pass the land or stock—never *ex vi termini*, but as only indicating the intent of the devisor that they should pass. The case cited in 22 *Eng. C. L. Rep.*, was the case of a devise of rents and profits directly to the devisee *himself*,—here it is *in trust* to the executors. An interposed trust will prevent the estate from passing. The case in 3 *Green*, 436, only decides, that a court of chancery will interfere to change investments. There is sufficient upon the face of this will to show that the testator designed the legatees should not have the principal, but that the same should be reinvested. The clause "as long as the law

will allow," refers exclusively to the real estate, and has nothing to do with the stocks.

ECCLESTON, J., delivered the opinion of this court.

On the 27th of June 1848, Andrew Meyer, then a resident in the State of Ohio, died leaving a will, in which he appointed two of his sons, Andrew and Joseph, his executors. The will was proved and recorded in that State, and letters testamentary were there granted to the executors. A transcript of the record of the will, under seal, having been sent to this State and recorded, letters testamentary were granted to the executors therein named, by the orphans court of Baltimore county, in July 1848.

The following eighth, ninth and tenth items of this will contain the provisions which relate to the matter in controversy:

"Eighth. I do constitute Andrew and Joseph Meyer, executors of this my last will and testament; and it is my will, that after my death, as soon as may be conveniently done, they sell the property owned by me on Frederick street, Baltimore, and invest the avails here, by loaning the same on real estate security, and out of the interest, or interest of other moneys, pay Margaret Hossafross the sum of one hundred and twenty dollars per annum, during her natural life, provided she remains single."

"Ninth. It is my will, that the rest of my real estate in Baltimore shall remain as at present, as long as the law will allow, drawing rent, and the rent to be divided equally among my children and their legal representatives; my bank stock also to remain unsold, and the dividends divided in the same manner, and any money I may have at interest, the interest to be divided in the same manner, and the principal, as fast as the same may be paid, to be reinvested, and the interest divided as aforesaid."

"Tenth. In case of the death of Andrew, Francis J. or Joseph, leaving a widow, she is to be paid by my executors, from my personal estate, five hundred dollars, provided, however,

that should they, or either of them, have received from item No. 9, before his or their death, the sum of five hundred dollars, then his or their widow to receive nothing on his or their death."

The children of the testator are his two executors, Elizabeth, wife of James H. Cassilly, Alena, wife of Thomas Patton, and Francis J. Meyer.

In October 1852, the two daughters, with their husbands, and Francis J. Meyer, filed their petition in the orphans court of Baltimore city, stating that the debts of the deceased had all been paid; that the executors have in their hands money and property in Ohio, more than sufficient to secure and pay the annuity given to Margaret Hossafross by the will. The petition concludes with a prayer, that the executors may be compelled to account for all the estate which has come to their hands in this State, principal and interest, and make distribution thereof among the legatees. The executors answered the petition, and filed as exhibits certain accounts and proceedings, in the courts of Ohio, in regard to the estate, and also two administration accounts passed in this State. These exhibits show a considerable amount of assets in their hands in Ohio, that a sum has been transferred there from Maryland, more than sufficient to pay to each of the three sons, Andrew, Francis J. and Joseph, $500, and that they had each received more than that sum.

In their answer the executors resist the application of the petitioners, and insist, that by the true construction of the will of the deceased, they are trustees of the estate mentioned in the ninth clause, and not subject to the jurisdiction of the orphans court of Baltimore, further than by their settlements as executors, to ascertain the amount of the principal, and to pay any debts due to citizens of Maryland. That with regard to the distribution of the estate, the jurisdiction belongs exclusively to the courts of Ohio, the petitioners being citizens of, and residing in, that State. They also contend, that the income from the estate in Maryland of right should be, and

in fact has been, accounted for in Ohio, as their accounts will show.

Only two judges were present in the court below, and being divided in opinion, an order was passed dismissing the petition. This order we are called upon to revise.

In argument the prayer of the petitioners was resisted on two grounds:—1st. Because, if the provisions of the will authorised, at present, a distribution of the whole of the personal estate, now in Maryland, among the legatees, the same should be transferred to Ohio for distribution, the courts of this State having no jurisdiction in such a case.

2nd. Admitting that our courts would have the authority to distribute the assets, if they were now in a proper condition for that purpose, still the petition was rightfully dismissed, inasmuch as, according to the provisions of the will, the petitioners are not entitled to demand a distribution of the bank stock, or of the principal of the debts due to the deceased, because they are subject to a trust not yet terminated.

The first ground presents a question which has occasioned much controversy, and elicited a great deal of learning in its discussion. The decisions in the different States have been treated of, with their usual ability, by the two very distinguished writers, Chancellor Kent and Mr. Justice Story, as may be seen in the *2nd vol.* of the *Commentaries* of the former, commencing at *marginal page* 431, *(new Ed.,)* and in *note a, page* 434; and in the *Commentaries* of the latter, on the *Conflict of Laws, sec.* 513, and *note* 2.

From a careful examination of these authorities and the cases referred to, we think it may be considered as a well settled principle, that in a case like the present the courts of this State are not bound to transfer the assets to Ohio, for distribution there; but that it is matter of judicial discretion to do so, or to distribute them here, that discretion to be exercised according to the circumstances of the case.

At pages 432 and 433, Chancellor Kent, speaking of *Harvey vs. Richards,* says: "It was held, upon a masterly consideration of the case, that whether a court of equity would proceed

to decree an account and distribution according to the *lex loci rei sitæ*, or direct the assets to be distributed by the foreign tribunal of the domicil of the party, would depend upon circumstances." Again it is said: "Though the property was to be distributed according to the *lex domicilii*, national comity did not require that the distribution should be made abroad. Whether the court here ought to decree distribution, or remit the property abroad, was a matter of judicial discretion, and there was no universal or uniform rule on the subject." And in the note referred to the chancellor informs us, that in Vermont this judicial discretion is recognised; that it rests on courtesy and expediency alone, and though it is the usual course to remit the assets, still this will not be done when the rights of those entitled to the estate would be endangered by it.

In the 513 *section* of *Story*, he advances the doctrine, that the new administration is ancillary or auxiliary to the original foreign administration, so far as regards the collection of the effects and the proper distribution of them. But that "the new administration is made subservient to the rights of creditors, *legatees and distributees, resident within the country.*" In *note* 2, he refers with decided approbation to the learned opinion of Chief Justice Parker, in *Dawes vs. Head*, 3 *Pick.*, 128, from which large extracts are made. In that case the court thought it could not be, that in every case a final settlement of the estate should take place under the jurisdiction which granted the ancillary administration; for, if so, then, if there were no debts there, "and none to claim as legatees or next of kin," all would be required to prove their right and receive their distributive shares there, notwithstanding the *lex domicilii* must regulate the settlement. They considered it clear, that in such a case the assets should be remitted to the foreign executor or administrator, because the distribution should be made according to the laws of the country, where the deceased was domiciled. It is then said: "And if any part is to be retained for distribution here, it will be only by virtue of some exception to this general rule, or because *the*

*parties interested seek their remedy here;* in which case it might be within the legal discretion of the court here to cause distribution, or to remit, according to the circumstances and condition of the estate."

These authorities seem very clearly to establish, that there is a judicial discretion on this subject, which is to be regulated by the circumstances of each particular case. And especially that under such discretion, the assets may be distributed by the court granting the ancillary administration, where the legatees or distributees reside there, or, in the language of Chief Justice Parker, where they "seek their remedy there." If the residence of claimants will entitle them to expect this discretion to be exercised for their benefit, we see no just reason why non-resident parties may not, voluntarily, come in and ask the same privilege; particularly, when, as in the present case, all the parties having any interest in the assets are before the court.

The executors being here as parties, they, together with the petitioners, are all the legatees, having an interest in the assets now in this State.

No circumstances showing any particular propriety or necessity for transferring the property to Ohio have been presented. It is not alleged that there are outstanding debts to be paid; but the only objections urged against the application of the petitioners, are those which have been stated, as based upon a want of jurisdiction over the subject in the Maryland courts, and an alleged subsisting trust created by the will.

On the subject of jurisdiction, believing our courts have a discretion, we think the prayer of the petition should have been granted. We see no good reason why it should not, whilst there are reasons to the contrary. The proceedings in the record exhibit clear proof of a failure, in several particulars, on the part of the executors to perform their duty in Ohio; the administration in Maryland had been standing in an unsettled condition for more than four years when this petition was filed, and directing the estate to be transferred,

would only be productive of still more delay and further expense, without, as far as we can see, benefitting any one.

In our opinion, there is no trust which can take from the orphans court its jurisdiction over the personal estate of the deceased, now remaining in this State. The property on Frederick street in Baltimore has been sold, and the proceeds taken to Ohio, in obedience to the directions of the will.

The bequest of the dividends of the bank stock and interest of the debts to his children, is a gift to them of the stock itself, and also the principal of the debts. The direction that the one should remain unsold, and the other reinvested, as it might be received, cannot prevent the children from now claiming the principal.

It is true, as has been contended, that a life estate in a chattel may be given to one person, and the same, with its increase, be limited over to another. But this can only be done by express words or necessary implication. *Evans vs. Iglehart*, 6 *G. & J.*, 185. In this case there are no such express words, and it will be exceedingly difficult to discover any such necessary implication. The dividends and interest are given to the children in general terms, without limitation as to time. Neither is there any limitation as to the duration of the direction not to sell the stock and to reinvest the principal of the debts, unless the expression, "as long as the law will allow," used in connection with the real estate, mentioned in the same clause, is to be considered as applicable to the stock. But this discloses no intention on the part of the testator, that the principal of those portions of his estate should be preserved for the ultimate benefit of any other persons than his children; neither can we discover a design that the same should be paid or delivered over to them as they arrive at age, or at any specified period, so as to prohibit them from demanding a distribution thereof until then. But the bequest is a simple unqualified gift of the dividends and interest, which carries with it the principal of the debts and the stock also. On this point the case before us is very analogous to that of *Manning vs. Craig, et al.*, 3 *Green's N. J. Rep.*, 436. There

the will contained the following bequest: "Two hundred and fifty shares of stock that I hold in the great western turnpike company, in the State of New York, to remain unsold, and the dividends arising thereon I direct to be equally divided between" certain of his children and grandchildren, naming them. The application was to have the stock divided among the legatees, which the court ordered to be done. It was there held, that the gift of the produce of a fund, without limit as to time, is a gift of the fund, and that the interest of each legatee was vested.

A devise of the *rents and profits* of land, is equivalent to a devise of the land itself, and will carry the legal as well as beneficial interest therein. 2 *Jarman on Wills, marg. p.* 534.

If at any time there was a necessity for retaining a portion of the Maryland estate, to meet the contingency depending upon the decease of Andrew, Francis J. and Joseph, leaving widows, that necessity no longer exists, because each of those sons has received the $500, which puts an end to all claim on the part of his widow.

We think the order of the court below ought to be reversed and the cause remanded, that the orphans court may direct a sale of the bank stock, the collection of any outstanding debts due the estate, and requiring the executors to account, so that a distribution may be made among the legatees.

*Order reversed and cause remanded.*