LOUIS E. JOHNSON *vs.* THE SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, and others.

*Construction of Will—Question of Partial intestacy—Equitable estate—Devise of Rents and Profits.*

A testator by the first four clauses of his will made specific devises in favor of certain of his children. The fifth clause was in these words: "I devise all the rest and residue of my real and personal estate in the City of Baltimore, and in Anne Arundel County, except as hereinafter provided, to my said trustees, in fee simple, in trust that they may hold the same to and for the uses hereinafter mentioned, or sell the same, or any part thereof, and hold the proceeds thereof to and for the same uses; that is to say, that until they shall sell the same they shall hold and pay the rents and profits thereof equally to and for the use and benefit of my said daughters, (naming them) free from the debts or obligations of their respective husbands," By the sixth, seventh, and ninth clauses he directed his trustees, out of the proceeds of the sales of any portion of the real estate mentioned in the fifth clause, to invest several sums of money for purposes specified by him. In the tenth and eleventh clauses, by which respectively certain bequests of personal articles were made to his son R. J., and his daughter Mrs. T., he stated that he gave them no more of his estate because they were otherwise sufficiently provided for. By the ninth clause it is declared: "Whereas I have hitherto advanced considerable amounts in money to my son L. E. J. and have had the entire support and maintenance of his four children aforesaid, and also provided for them by this will, I do not think it just and proper to give him an equal share of my estate with his brothers and sisters. I do nevertheless direct my said trustees to invest eight thousand dollars of the proceeds of the sale of my real estate aforesaid in State of Maryland or City of Baltimore stock, and to pay over the interest which may from time to time accrue on such investments to my said son." The real estate in the City of B. mentioned in the fifth clause of the will having been converted into money subsequent to the death of the testator, after the investments of the amounts bequeathed by the sixth, seventh, and ninth clauses, there remained a large

Johnson *vs.* Safe Deposit and Trust Company.

balance in the hands of the trustees, which L. E. J. claimed was not disposed of by the testator, and as to which it was insisted he died intestate. Upon a bill filed by the substituted trustee, for the construction of said will, it was HELD:

1st. That it was obvious from the language of the fifth clause of the will that the equitable estate vested under this clause in the daughters named as *cestuis que trust* was co-extensive with the fee simple estate in the realty, and the absolute estate in the personalty, and the like estate in the proceeds of the sale of the realty and personalty vested in the trustees.

2nd. That the devise of the rents and profits to the daughters was sufficient to vest in them an equitable fee in the rest and residue, and also an absolute equitable estate in the proceeds of the sale of that rest and residue, as tenants in common, for such was the manifest intention of the testator, and there was neither a limitation over nor an expression of any kind to denote a contrary or a different purpose.

3rd. That the trustees were directed to hold and pay the rents and profits of the rest and residue of the real and personal estate in Baltimore before a sale equally to and for the use and benefit of the daughters, and, as the trustees were to hold the proceeds of a sale to and for the same uses, they must necessarily hold them to and for the use and benefit of the same daughters, precisely as they held the property itself before a sale.

4th. That as the equitable estate of the daughters was equal in duration to the legal estate of the trustees, and as the devise of the rents and profits to the daughters carried an absolute equitable interest, it also operated to vest in the daughters an absolute equitable interest in the proceeds after a sale, because in no other way could the proceeds of sale be held, as the clause explicitly declared they should be, to and for the same uses as the rest and residue of the real and personal estate was directed to be held.

5th. That there was no failure or omission to dispose of such proceeds, and consequently there was no intestacy as to them, but a clear and complete disposition of them to the trustees to and for the use and benefit of the daughters.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed by the Safe Deposit and Trust Company of Baltimore, as trus-

tee, to obtain a proper construction of the last will and testament of the late Reverdy Johnson, and the direction of the Court as to the manner in which the complainant should perform its duties as such trustee. From a decree of the Circuit Court (DENNIS, J.,) construing the said will this appeal was taken. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, ROBERTS, McSHERRY, BOYD, and BRISCOE, J.

*Thomas Hughes,* and *T. Wallis Blakistone,* for the appellant. After hearing *Mr. Hughes,* the Court declined to hear counsel for the appellees.

*Charles Marshall, Reverdy Johnson, Charles G. Kerr,* and *Charles J. M. Gwinn,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

We have before us for construction the will of the late Mr. Reverdy Johnson, who in his day was one of the ablest and most distinguished lawyers of this country. The will was dictated, but not penned by him, because his failing eye-sight prevented him from writing it with his own hand. He was perfectly familiar with the rules of law relating to testamentary dispositions, thoroughly master of the legal principles governing the interpretation of wills, and fully acquainted with the value and significance of the words and phrases which he employed to express his wishes and intentions. Notwithstanding this, we are met by the startling contention on the part of the appellant that a proper construction of the whole instrument leads to a partial intestacy as to the proceeds of the sale of certain real estate referred to in the fifth clause of the will.

That Mr. Johnson did not intend to die intestate as to any of his property, or as to the proceeds of the sale

of any of it, is too obvious, we think, to admit of even a momentary doubt. The mere fact of his having made a will furnishes in itself a strong presumption that he had no such intention. And when the whole context of the will discloses by all its interdependent and harmonious provisions an entirely opposite design, Courts will, or ought to, "struggle against an intestacy" which can only arise as a result of a forced and unnatural construction. *Booth vs. Booth*, 4 *Ves., Jr.*, 403. Bearing in mind the cardinal rule that the testator's intention as gathered from the four corners of the instrument must prevail, and must be given full effect unless that intention violates some settled legal principle, and recognizing the established doctrine that when the residue is given, every presumption is to be made that no intestacy was designed, (*Philipps vs. Chamberlaine*, 4 *Ves., Jr.*, 51,) we find no difficulty in reaching the conclusion that the position assumed by the appellant is wholly untenable.

When Mr. Johnson died he was a widower, and he left surviving him four sons and seven daughters. By the first clause of his will he gave in fee simple to his son Bowie Johnson a farm in Alleghany County. By the second clause he gave to his son Edward C. in fee simple a dwelling house and fifty acres of land contiguous thereto. By the third clause he gave to his daughter Mrs. Gwinn in fee simple a cottage and forty acres of land adjacent thereto. Both of these devises were carved out of the testator's farm situated in Baltimore County. By the fourth clause he gave the rest and remainder of his said farm to trustees in trust, to cause the same to be divided into five parts of equal value, and to convey in fee simple one of such parts to each of his five daughters, Mrs. Morris, Mrs. Daingerfield, Mrs. Ridgely, Mrs. Lewis and Mrs. Kerr. The fifth clause, which is the one that gives rise to the pending controversy

will be quoted later on.   By the sixth, seventh and ninth clauses he directed his trustees out of the proceeds of the sales of any portion of the real estate mentioned in the fifth clause, to invest several sums of money for the purposes specified by him, but they need not now be alluded to.   After bequeathing certain portraits and a watch to his son Reverdy, he declared in the eleventh clause: ''I do not give my said son anything more than is contained in this will, because he has an estate amply sufficient for all his wants.''   By the tenth clause he directed his trustees to have a copy of his portrait made for his daughter Mrs. Travers, who ''being amply provided for by her husband,'' was not made a devisee or legatee under the will.

The property devised by the fifth clause consisted of a house and lot on the corner of Fayette and Calvert streets, in Baltimore City, and an unproductive lot at Locust Point.   The Anne Arundel property mentioned in this clause had been sold by the testator many years before.   Some fifteen years after the death of Mr. Johnson, the Fayette street property was acquired by the Mayor and City Council of Baltimore for the purpose of widening that street, and the amount of damages or purchase money awarded to the trustees was fixed at one hundred and sixty thousand, forty-one dollars and sixty-six cents, which sum was paid over to the Safe Deposit and Trust Company, which had in the meantime, at the request and upon the petition of Messrs. Reverdy Johnson and Charles G. Kerr, the surviving trustees under the will, been appointed trustee in their place and stead.   Out of this sum of money the Safe Deposit and Trust Company, as trustee, after deducting some expenses, paid off certain liens on the Fayette street property, leaving in its hands the sum of about one hundred and thirty thousand dollars.   After an investment of so much of the amounts bequeathed by the

Johnson *vs.* Safe Deposit and Trust Company.

sixth, seventh and ninth clauses as had not already been paid out by the former trustees, there will remain the sum of one hundred and odd thousand dollars, which the appellant claims has not been disposed of by the testator, and as to which it is insisted he died intestate. Whether this be so or not is the leading question in the case; and its solution depends upon the meaning of the fifth clause viewed as an integral part of, and taken in connection with the scheme of, the whole instrument. The fifth clause is in these words: "I devise all the rest and residue of my real and personal estate in the City of Baltimore and Anne Arundel County, except as hereinafter provided, to my said trustees, in fee simple, in trust that they may hold the same to and for the uses hereinafter mentioned, or sell the same or any part thereof, and hold the proceeds thereof to and for the same uses, that is to say, that until they shall sell the same they shall hold and pay the rents and profits thereof equally to and for the use and benefit of my said daughters, Mary Morris, Eliza Daingerfield, Camilla Ridgely, Emily Lewis and Ella Kerr, free from the debts or obligations of their respective husbands."

It is obvious from this language that the equitable estate vested under this clause in the daughters named as *cestuis que trust* is co-extensive with the fee simple estate in the realty, and the absolute estate in the personalty and the like estate in the proceeds of the sale of realty and personalty vested in the trustees. 3 *Jar. on Wills*, 28; *Challenger vs. Sheppard*, 8 *T. R.*, 597; *Moore vs. Cleghorn*, 10 *Beav.*, 423; *Yarrow vs. Knightly*, 8 *Ch. D.*, 736; *Knight vs. Selby*, 3 *Man. & Gr.*, 92. But apart from this, the devise of the rents and profits to the daughters was sufficient to vest in them an equitable fee in the rest and residue, and also an absolute equitable estate in the proceeds of the sale of that rest and residue as tenants in common, for such was the manifest

intention of the testator; and there is neither a limitation over nor an expression of any kind to denote a contrary or a different purpose. 2 *Jar. on Wills*, 403, *and notes; Watkins vs. Weston*, 32 *Beav.*, 238; *Cooke vs. Husbands, et al.*, 11 *Md.*, 492; *Casilly vs. Meyer, et al.*, 4 *Md.*, 1; *Drusadow vs. Wilde, et al.*, 63 *Pa. St.*, 170.

Now this clause directs the trustees to hold the rest and residue of the whole real and personal estate in Baltimore, except certain bequests to which no reference need be made, to and for the uses thereinafter mentioned, and it further explicitly directs them to hold the proceeds of the sale thereof to and for the *same* uses; that is to say, to and for the identical uses declared in the same clause in respect of the rest and residue of the real and personal estate *before* a sale thereof. But they are directed to hold and pay the rents and profits of the rest and residue of the real and personal estate in Baltimore *before a sale*, equally to and for the use and benefit of the daughters; and as the trustees are to hold the proceeds of a sale to and for the *same* uses, they must necessarily hold them to and for the use and benefit of the same daughters, precisely as they held the property itself before a sale. Consequently, as the equitable estate of the daughters was equal in duration to the legal estate of the trustees, and as the devise of the rents and profits to the daughters carried an absolute equitable interest, it also operated to vest in the daughters an absolute equitable interest in the proceeds after a sale; because in no other way could the proceeds of a sale be held, as the clause explicitly declared they should be, to and for the *same* uses as the rest and residue of the real and personal estate was directed to be held. In fact, therefore, the testator declared in express, unambiguous and apt words that the proceeds of the sale of any part of the rest and residue devised by the fifth clause should be held to and for the *same* uses

Johnson *vs.* Safe Deposit and Trust Company.

to and for which he directed the rest and residue to be held before a sale thereof; that is, to and for the use and benefit of the daughters free from the debts or obligations of their respective husbands.   Hence, there was no failure or omission to dispose of such proceeds, and of course, there is no intestacy as to them, but on the contrary, a clear and complete disposition of them to the trustees to and for the use and benefit of the daughters.   Any other conclusion would do open violence to the testator's language and would utterly frustrate his purposes.

This conclusion is made even more apparent if that be possible, when subsequent clauses of the will are considered.   We have already alluded to the provisions of the tenth and eleventh clauses, in the first of which the testator declares that he makes no devise to Mrs. Travers, because she is amply provided for by her husband; and in the second of which he says he does not give his son Reverdy anything more than the portraits and watch, because that son has an estate amply sufficient for all his wants.   These clauses clearly indicate that the testator did not intend this daughter and this son to have any more of his estate than he had specified, and therefore that he did not contemplate such a contingency as a partial intestacy.   But the ninth clause is even more emphatic and significant.   It declares: "Whereas, I have hitherto advanced considerable amounts in money to my son Louis E. Johnson, and have had the entire support and maintenance of his four children aforesaid, and also provided for them by this will, I do not think it just and proper to give him an equal share of my estate with his brothers and sisters.   I do nevertheless direct my said trustees to invest eight thousand dollars of the proceeds of the sale of my real estate aforesaid in State of Maryland or City of Baltimore stock, and to pay over the interest which

may from time to time accrue on such investments to my said son." Here, then, is the most unequivocal manifestation of an intention that the appellant should have no other part or portion of the testator's estate, and consequently an absolute exclusion of the hypothesis that he did not design by the language which he employed in the fifth clause to dispose of the whole of the proceeds of sales of the rest and residue of his real and personal property in Baltimore. It is impossible for language to make his intention to dispose of the proceeds more evident. If this postulate, that he did not design to die intestate or partially intestate be accepted, then there is no escape from the conclusion that he intended by the fifth clause to make the same disposition of the proceeds of sale that he confessedly made of the rest and residue of the real and personal estate in Baltimore before a sale thereof by the trustees. And if this was his intention the language he used was technically accurate to express it. This view seems to us to be decisive of the case and dispenses with the necessity for further discussion.

Without pausing to state the other subjects covered by the decree below, because they were either not controverted in this Court or else are disposed of by what has already been said in this opinion, we need only observe that we fully concur in the results reached by the learned Judge of the Circuit Court, and in all particulars we will affirm the decree appealed from, with costs.

*Decree affirmed, with costs.*

(Decided 13th March, 1894.)