MAMIE COOK SYFER ET AL. *v.* RALPH P. DOLBY ET AL.

[No. 30, April Term, 1943.]

140

*Decided June 2, 1943.*

The cause was argued before SLOAN, C. J., COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Raymond M. Duvall,* with whom was *Fillmore Cook* on the brief, for the appellants.

*Hillary W. Gans* for the appellees.

GRASON, J., delivered the opinion of the Court.

William Cook, late of the City of Baltimore, died on the 17th day of May, 1942. A will, dated the 10th day of March, 1938, together with a codicil thereto, dated the 16th day of April, 1942, styled "second codicil to Will of William Cook," was probated in the Orphans' Court of Baltimore City on the 25th day of May, 1942. On the 25th day of July, 1942, a paper writing dated the 29th day of March, 1940, executed by William Cook, attested by three witnesses, was presented to said court for probate. The testator in terms declares it to be a "Codicil to my Last Will and Testament bearing date the 10th day of March, 1938." This paper will be referred to as the "secret codicil." A caveat was promptly filed thereto and the following issues were sent to the Court of Common Pleas of Baltimore City, to be tried by a jury. The first issue submitted the question of whether the "secret codicil" was a codicil to the last will and testament of William Cook. The second issue submitted the question of whether the contents of the "secret codicil" were read or known to the testator at or before the time of its alleged execution. The third issue submitted the question of whether or not the "secret codicil" was revoked after the making and execution thereof. The fourth issue submitted the question of whether the "secret codicil" was signed by William Cook, or by some other person for him in his presence, and by his expressed direction, and attested and subscribed in his presence by two or more credible witnesses. These issues were tried by

the court, sitting as a jury, and by its verdict the answer to the first issue was "No"; to the second issue "Yes"; to the third issue "Yes" and to the fourth issue "Yes," and "from the orders or judgments rendered in the above entitled case upon the first and third issues" an appeal was taken by the defendants (caveatees) to this court.

William Cook was a very successful man. He was engaged in the undertaking business as well as in a business called "Cook Motor Company." He amassed a fortune, totaling approximately a million, two hundred thousand dollars. His will is lengthy, comprising twelve and one-half pages of the printed record in this case. Item I of the will consumes at least seven printed pages of the record. On or about April 8, 1937, a corporation was formed under the laws of the State by William Cook, Harry E. Cook and Ralph P. Dolby. The name of this corporation is "William Cook, Incorporated." By the first item of his will he directed that his business as funeral director "shall be continued after my death by William Cook, Incorporated." The general scheme set up in Item I of the will was that all of the assets of his business as funeral director and the business of "Cook Motor Company" were to be transferred to the corporation. The way and manner of accomplishing this is meticulously and at length set out in this item, which is too long to be embodied in this opinion. In sub-section one of Item I he bequeathed stock in the corporation, in percentages designated, to certain individuals, and in sub-section two of said item he bequeathed stock in said corporation, in terms of cash, to certain employees, conditioned upon their surviving him and in his employ at the time of his death. He suggests and advises how the corporation should be run. The testator evidently intended that the corporation bearing his name and by which the business was to be conducted, was to be a memorial to him. This will was prepared by Mr. Ernest E. Wooden, who is a lawyer and an accountant, and who

had close relations with the testator in auditing his business from time to time.

The testator consulted Mr. James T. Carter, vice-president and general counsel of the Fidelity Trust Company, about his will and Mr. Wooden, in drafting it, with the consent of the testator, collaborated with Mr. Carter. Mr. Wooden, at the request of the testator, prepared three codicils to the will. The first, dated the 13th day of May, 1940, and styled "first codicil," revoked a bequest in Item I of the will to Ralph Hill, Hill having died since the execution of the will; and Item II of the codicil directed that the fifteen institutions mentioned in Item XIII of the will must be in existence at the time of his death in order to receive the bequests made respectively to the institutions specified, and further directed that if he held any evidence of indebtedness of any of said institutions at the time of his death that the same be distributed to it, at par value, as a part "of its $5000.00 bequest."

The second codicil is dated the 8th day of March, 1941, and is styled "second codicil" to said will. The testator's brother, Eugene Cook, died on March 5, 1941, and this codicil revoked all provisions in the will pertaining to his said brother, which are contained in Item I of the will. The other provisions in this codicil do not affect the determination of this case.

The third and last codicil prepared by Mr. Wooden is dated the 13th day of October, 1941. Mr. Wooden, in his testimony (record page 16), said he "decided to combine the original first codicil and the second codicil in a new codicil which I termed a first codicil, because the first and second codicils were to be destroyed." This third codicil repeats the revocation of all of the provisions in the will made to the brother Eugene Cook, because of his death, and refers to Item I of the will. It was intended, according to Mr. Wooden, to be a combination of the first and second codicils but it omits the revocation of the bequest to Ralph Hill contained in the

first item of the will, which was effectuated by the first codicil.

The fourth codicil is dated the 16th day of April, 1942, and is styled "second codicil to Will of William Cook." This paper was not prepared by Mr. Wooden, but under the following circumstances. The testator took a paper written by himself in pencil to Margaret C. Curran, an employee. Miss Curran testified: "He had forgotten to give his jewelry and some household effects; he had just remembered it, and wanted to write a new codicil. He had another codicil dated in October, 1941, and asked me to combine both." The revocation of the provision for Eugene Cook, contained in Item I of the will, is repeated and the rest of the codicil does not affect the decision of this case.

Thomas J. Murphy, who had been with Mr. Cook from 1912 until the death of the testator, was vice-president of William Cook, Incorporated, and was manager of the funeral business. He and Mr. Cook occupied the same office, in which there was a safe. Murphy, together with Dolby, had access to the safe by a key, which each used from time to time. Murphy testified that Mr. Cook told him and Dolby "if anything should happen to me, you will find the Will in the box in the safe." After Mr. Cook's death he opened the safe, found the box and in it an envelope. Mr. Wooden testified that he was present at the time and said: "It was a large white manila envelope and it had written on the outside, in Mr. Cook's handwriting, 'Last Will and Testament of William Cook'." He gave the envelope, with its contents, to Mr. Carter, and it contained the will and the codicil dated the 16th day of April, 1942, styled "second codicil to the will of William Cook," which were probated in the Orphans' Court. Wooden further testified that Cook told him in May, 1942, he (Wooden) "would find his will in his box."

On the 10th day of July, 1942, Harry E. Cook gave to James Sollers, who had been employed by the testator for twenty years, two dark suits of clothes that belonged

to the testator. Before Sollers took the clothes to be cleaned he went through the pockets and in the inside coat pocket of one of the suits he found the paper writing dated the 29th day of March, 1940 (which we call the "secret codicil"), which he turned over to Mr. Harry Cook and which was presented to the Orphans' Court of Baltimore City and is the subject of this suit.

The "secret codicil" provides: "I hereby revoke Item I—on page 1—of my last will and also revoke any and all codicils made since my last will—and cancel all bequests in reference to gifts of stock of the Wm. Cook Corporation, and change the same to read as follows: I hereby give and bequeath stock in Wm. Cook Corporation to the following employees, if still in my employ," and after the name of each person is a specific sum of money. In Item I of the will Ralph P. Dolby was bequeathed 16 per cent. and Thomas J. Murphy 5 per cent. of said stock. By this codicil they receive $20,000 and $10,000 worth of stock respectively in said corporation. James Sollers was given $5,000 worth of stock in the place of $2,500 worth as provided by Item I of the will. Howard H. Hubbard was given $2,500 worth of stock in the place of $1,500 worth as provided by Item I, and Florence Mullikin was given $2,500 worth of stock, but whether she is Florence Mullikin Tuerke to whom $1,500 worth of stock was bequeathed in Item I of the will is not known. Mr. Robertson was given $2,500 worth of stock, Walter Penny $2,000 worth, and Mr. Meyer $1,000 worth. James Cockrill, who was given $1,500 worth of stock in Item I is, by the "secret codicil" given $1,000 worth of stock. Miss Taveau is given $1,000 worth of stock and James Devine, who was given $1,500 worth of stock in Item I of the will, by the "secret codicil" is given only $1,000 worth of stock. A line is run through the amounts respectively opposite the names of Hubbard, Mullikin, Penny and Meyer and it would appear that $2,500 was attempted to be substituted for the amount of stock that Penny and Meyer were originally be-

queathed. There is a numeral "10" next to the amount of $5,000 opposite the name of James Sollers. Robertson, Penny, Meyer and Miss Taveau were not mentioned in Item I of the will.

The above bequests are conditioned upon whether the persons named were employees of Cook at the time of his death and on a further condition that "they invest in the Wm. Cook Corporation, and purchase stock in an amount equal to one-half the amount of cash bequeathed to them by my last Will." Mr. Cook also says in this codicil: "I further direct a further distribution of said stock of the Wm. Cook Corporation to be given as follows, without any purchase of stock in the said Corporation: My Estate, $35,000; Harry E. Cook, $25,000; Ernest E. Wooden, $5,000; Robert C. Jones, $1,000." He provides in this codicil that the balance of said stock is to be sold to "employees of said Corporation, or held in the Treasury of said Corporation, to be decided on by the Board of Directors of said Corporation" and that the dividends of said corporation be paid in equal amounts to five named institutions. The "secret codicil" then provides: "I hereby cancel all codicils made previous to this one and desire this codicil become effective at once, and direct all other items, except the one herein mentioned of my last Will made on the 10th day of March, 1938, was carried out as written."

The circumstances of the execution of the "secret codicil" are as follows: Mr. Cook called on Mrs. Carmelite E. Hubbard, who was a public stenographer at the Emerson Hotel, Baltimore. She had been recommended to him "as doing everything strictly confidential." He stated to her, "I have a very important document I would like you to fix for me. I have been here on two previous occasions." He handed her some yellow sheets of paper which contained writing in pencil. He said to her: "This is a codicil I am putting to my will. I have a secretary in my undertaking establishment, but I do not care for this to go through the channels of business." She type-

wrote the "secret codicil" for him from the pencil memorandum. She procured the witnesses and he signed and executed it in the presence of the witnesses. "Then Mr. Cook put the codicil in his pocket, thanked me, paid me, and he left."

The extent to which the "secret codicil" may revoke Item I of the will is a matter to be determined by a court of equity upon construction of the testamentary papers, and on this matter we express no opinion.

By sub-section two of Item I of the will he bequeathed seven employees stock in William Cook, Incorporated, on condition "that in case any of the (seven) legatees receiving stock shall leave the employ of the said corporation at any time within five (5) years after my death, or shall within that period die, the said corporation shall have the right and option, if it so elects, to purchase the said shares from the person so leaving the employ of the corporation, or from the estate of the person so dying." In the "secret codicil" one of these seven persons, to wit: Charles Kreissig, mentioned in Item I of the will, is omitted and changes are made in the stock (measured in money) that they would get under Item I of the will, and four other persons are named, making eleven persons in the codicil instead of seven, and the condition upon which these bequests of stock are made in the "secret codicil" is different from the condition contained in Item I of the will. The "secret codicil" provides the above stock is given "the said employees if they are still in my employ at my death, on condition they invest in the Wm. Cook Corporation and purchase stock in an amount equal to one-half of the cash bequeathed to them by my last Will." The "secret codicil" further provides "a further disposition of said stock of the Wm. Cook Corporation to be given as follows, without any purchase of stock in said corporation: My Estate, $35,000; Harry E. Cook, $25,000; Ernest E. Wooden, $5,000; Robert C. Jones, $1,000." So that the bequests of stock in said corporation to Dolby, Murphy and Wooden were changed

from a percentage basis, conditioned upon their survival of the testator, to a cash basis, absolutely, and the "secret codicil" bequeaths to Robert C. Jones $1,000 worth of stock absolutely. This is an addition, as the name of Robert C. Jones does not appear in Item I of the will. There is a provision in the "secret codicil" "that dividends of the said Corporation are to be paid in equal amounts to the following, naming five institutions." It thus appears that Mr. Cook, by the "secret codicil," made certain definite changes in Item I of his will and the remaining fifteen items of his wll are not materially affected by it.

It is contended by caveators that the "secret codicil" was revoked by implication by the codicils hereinbefore mentioned and referred to and it is urged that the codicils subsequent to the "secret codicil" show clearly that it was Mr. Cook's intention to revoke it; while the caveatees (appellants) contend that the "secret codicil" was not revoked by the subsequent codicils and that they carry no intent to effectuate such a purpose. It is further contended by caveatees that the "secret codicil" could only be revoked in the way and manner prescribed by Section 337 of Article 93 of the Annotated Code of Maryland (1939). The trial court adopted the theory of the caveators and found as a fact that the codicils subsequent to the "secret codicil" showed an intent to revoke it. It is conceded that the "secret codicil" was executed in conformity with the law of this state. It has always been the rule that a "will and the codicil constitute one instrument; and the codicil revoking in terms a portion of the will, has the effect to republish the will as of the date of the codicil, in respect to all parts of the will not revoked by the codicil, either in express terms, or by a bequest or devise, so entirely inconsistent with the terms of the will as to make it impossible to give effect to both." *Jones v. Earle, Executor,* 1 Gill 395.

"A codicil to a will operates as a republication of the whole will, so far as it is not revoked or altered by the

codicil, and so as to include any alterations made before the date of the codicil." 68 *C. J., Wills,* Sec. 584, page 867.

"Where a testator in a codicil revokes a provision of his will, and in a second codicil referring to the will by date says: 'I do confirm my said will in all respects, except so far as the same is changed by this codicil,' he does not by the second codicil re-establish the provision in the will which had been revoked by the first codicil." *Lee's Estate,* 16 Pa. Super. 627.

"There is a distinction between an intermediate will and an intermediate codicil in this respect, and where the testator by a codicil confirms his will, the will together with all codicils, is ordinarily taken to have been confirmed. * * * A mere reference to date of the original will is no indication of the intention to deprive all instruments other than the original will itself of any force; in fact such a reference to a will does not effect a revocation of the antecedent codicils, but is a ratification of the will as modified by the codicils." *Third National Bank v. Scribner,* 175 Tenn. 14, 130 S. W. 2d 126, 131, 123 A. L. R. 1385.

"Failure of a testator in one codicil to refer to a former codicil does not revoke the former codicil." *Warnken v. Warnken,* Tex. Civ. App., 104 S. W. 2d 935, 938.

"A codicil is a part of the will, the codicil, or codicils, if more than one, and the original will, making but one testament, as much so as if written on the same paper." And "testator by ratifying and confirming his last will ratifies and confirms it with every codicil that has been added to it." *Loveren v. Eaton,* 80 N. H. 62, 113 A. page 206.

These authorities support the following propositions: (a) A codicil executed in due form republishes a will as amended by a previous codicil; (b) A subsequent codicil does not revoke a prior codicil in the absence of an express revocation or in the event a second codicil is so inconsistent with the first that the two cannot stand together. In legal effect a second codicil which is so in-

consistent with a former one that they cannot stand together and each be given effect, is tantamount to an express revocation of the first codicil by the second.

From a consideration of the codicils subsequent to the "secret codicil" we cannot see that the subsequent codicils are so inconsistent with the "secret codicil" as to amount to a revocation of it. If this was not so, then all the changes in and additions to the will made by the "secret codicil" would fail; and this would be so although such changes and additions could be given effect and are not inconsistent with the provisions of the subsequent codicil. In the case of *Woodstock College v. Hankey*, 129 Md. 675, at page 683, 99 A. 962, at page 965, Judge Urner, speaking for this court, said:

"The only methods of revoking a will in this State are those prescribed by Section 324 of Article 93 of the Code" (which is now Section 337 of the Code of 1939). That section provides "no will in writing devising lands, tenements or hereditaments, or bequeathing any goods, chattels or personal property of any kind, as heretofore described, nor any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same, by the testator himself or in his presence, and by his direction and consent; but all devises and bequests so made shall remain and continue in force until the same be destroyed by burning, cancelling, tearing or obliterating the same by the testator or by his direction, in manner aforesaid, unless the same be altered by some other will or codicil in writing or other writing of the devisor signed as hereinbefore said in the presence of two or more witnesses declaring the same."

And the term "will" used in this section comprehends a "codicil."

The will in that case was discovered in an old back room which was full of papers and rubbish. The testator had a safe deposit box in which he kept his bonds, certificates of stock, and some title deeds. The court

commented: "This was the place where it might have been supposed that the will also would be kept, but the fact that it was not given the care and protection which other important papers received does not prove that its revocation was intended." And neither in the case at bar does the fact that the "secret codicil" was not kept in the box in the safe in the testator's office, prove an intention to revoke. This "secret codicil" was not "burned, cancelled, torn or obliterated." "It remained in the testator's possession until the time of his death." The only pretension that it is not effective is that it was revoked by implication, but in none of the subsequent codicils was it specifically revoked or even referred to. And the subsequent codicils are not so inconsistent with it as to be tantamount to a revocation. It is further stated in the case last referred to that "testimony was offered as to subsequent declarations by the testator inconsistent with some of the provisions of the will, but such evidence was not sufficient or admissible to prove that the will had been revoked." And neither were the subsequent declarations by the testator in this case admissible to prove a revocation of the "secret codicil."

"The statute does not permit a formally executed will to be revoked by verbal declarations." *Woodstock College v. Hankey, supra.*

And neither does the statute permit a formally executed codicil to a will to be revoked by verbal declarations. And the drawing of a line through the amounts of bequests to certain people as appear in the "secret codicil" has no effect upon it in other respects and clearly does not impair its general validity.

We are not dealing in this case with the construction of Mr. Cook's testamentary disposition, which falls within the jurisdiction of an equity court, and in a case such as this construction of a will and codicils is merely incidental to proof of facts necessary for their admission to probate.

We are of the opinion that a codicil to a will cannot be revoked except in the manner provided by the statute, or

when the second codicil is so inconsistent with the first as amounts to a revocation which is in effect a compliance with the statute. We do not think that mere intention to revoke is sufficient any more than we would think that mere intention to execute a will was sufficient. A will and a codicil must be executed in the manner provided by law and by the same token they must be revoked by methods approved and sanctioned by law. To hold otherwise would work great confusion in our testamentary system and it would open a way for disappointed relatives to employ small things magnified by their imaginations hoping to prove that the testator did not intend the contents of a paper writing executed with all the forms and solemnity known to the law to be his testamentary disposition. We disagree with the conclusion of the learned judge below and the first, second, third, fourth and fifth prayers of the plaintiff were erroneous and should have been refused and the answer to the first issue should have been "Yes," and the answer to the third issue should have been "No."

A court of law does not enter a judgment in cases involving issues sent to it for trial by an orphans' court. The appeal in this case is "from the orders or judgment rendered" "upon the first and third issues." There was quite correctly, no judgment rendered by the court below, and the appeal should have been taken "from any decisions or determinations or rulings" of the trial court. Article 5, Section 7, Annotated Code of Maryland (1939); *Contest of Wills in Maryland, Sykes,* page 192; *Kamps v. Alexander,* 133 Md. 198, 200, 104 A. 427.

We deem the word "orders" as used in the order for an appeal, to be equivalent to the word "rulings" used in the statute, and, therefore, the appeal as taken comes within the statute. But as the lower court could not enter a judgment in this case and did not do so, the appellants' attempt to appeal from something that did not exist is a mere futility.

*Rulings reversed and case remanded for a new trial.*