MAMIE COOK SYFER, ET AL. *v.* FIDELITY TRUST CO. (BALTIMORE, MD.) ET AL.

[No. 3, January Term, 1945.]

392

*Decided February 28, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Raymond M. Duvall*, with whom was *Fillmore Cook* on the brief, for the appellants.

*Harry N. Baetjer*, with whom were *James T. Carter* and *Venable Baetjer* and *Howard* on the brief for the executors.

*John H. Hessey*, with whom were *Hillary W. Gans* and *Harry L. Price* on the brief for William Cook, Inc., et al.

HENDERSON, J., delivered the opinion of the Court.

William Cook died May 17, 1942, leaving a will dated March 10, 1938, and a codicil dated April 16, 1942. Both were probated in the Orphans' Court of Baltimore City. Subsequently, another codicil dated March 29, 1940 [referred to herein as the "secret codicil"], was discovered in the pocket of an old coat of the decedent and was offered for probate. A caveat thereto was interposed and issues were framed and sent to the Court of Common Pleas, where a trial before the court, sitting as a jury, resulted in sustaining the caveat and rejecting the secret codicil on the ground that it was impliedly revoked by the codicil dated April 16, 1942; but on appeal to this court this ruling was reversed, and the case remanded. *Syfer v. Dolby*, 182 Md. 139, 32 A. 2d 529. Upon a new trial, the validity of the secret codicil was sustained, and on November 2, 1943, it was duly probated. On November 12, 1943, the executors filed a bill of complaint in the Circuit Court No. 2 of Baltimore City asking the court for instructions as to the meaning and interpretation of the will, and codicils. All of the beneficiaries and the corporation, William Cook, Incorporated, were made defendants. This appeal is from the decree in that proceeding passed on May 15, 1944. The appellants are two sisters and a brother of the decedent, who take shares in the residue. There are no cross-appeals.

Many of the facts concerning the will and codicils and the circumstances of the decedent were set out in the opinion by this Court in the previous appeal, and need

not be here repeated. Suffice it to say, that Mr. Cook was a very successful man, and left a net estate of some $880,000 of which the business assets used by him in his undertaking business were valued at $234,000. The net residuary estate, exclusive of business assets, amounted to approximately $500,000. He was a widower and had no children or descendants, but he left surviving him a number of brothers and sisters, and nephews and nieces, the children of deceased brothers.

By the provisions of his will he disposed of his estate substantially as follows:

In Item I he directed that his business be continued by a corporation bearing his name to which he directed the transfer of all the "business assets" of his estate (except cash in excess of $37,500) in exchange for all, or substantially all, of its unissued stock, which he suggested should be at least 6,000 shares of the par value of $25 each (a total of $150,000). He further suggested that part of such assets (now valued at $234,000) be set up as capital and part as paid in surplus. Such a corporation had been formed in 1937 by the decedent and two others, but at the time of his death it had no assets other than the proceeds of the sale of twenty shares of stock, twelve of which had been issued to the decedent.

By sections (1) and (2) he bequeathed stock of the corporation to associates in the business, and to certain employees. By subsection (3) he gave to persons named in (1) and (2) the right to buy additional shares in proportion to their holdings. By subsection (4) he provided that any of his employees, in his service and living at his death, who were left cash legacies, might invest such legacies in stock at par. By subsequent items he left cash legacies to certain relatives, employees and charitable corporations. The residue he divided between his next of kin and fifteen charitable corporations.

The secret codicil provided:

"I hereby revoke item No. 1—on page 1—of my last will and also revoke any and all codicils made since my last will—and cancel all bequests in reference to gifts

of stock of the Wm. Cook Corporation, and change the same to read as follows:

"I hereby give and bequeath stock in the Wm. Cook Corporation to the following employees, if still in my employ:"

(Here follows a list of employees.)

These gifts were conditioned on the investment by the donees of one-half the cash legacies left to them by the will. Unconditional bequests were also made to Harry E. Cook, Ernest E. Wooden, Robert C. Jones, and $35,000 of stock to "my estate," "the balance of said stock to be sold to the employees of the said Corporation or held in the treasury of said Corporation, to be decided on by the Board of Directors of the said Corporation." Then, followed a paragraph directing: "Dividends of the said corporation to be paid in equal amounts" to five charitable corporations.

The provisions of the later codicil all related to the residuary clause of the will, and are not in dispute. The problem presented in this appeal relates solely to the chancellor's reconciliation of the will and secret codicil, insofar as the rights of these appellants are concerned.

In his decree, the chancellor authorized the executors to transfer the "business assets," valued at $234,000, to the corporation in exchange for 5,980 shares of stock of the par value of $25 each, creating a paid-in surplus of $84,000. Accordingly, each share has an asset value of $39, rather than $25.

The appellants contend that the testator intended an even exchange, asset value for par value, stressing the fact that the will merely suggested that the capitalization be "at least" $150,000, or "at least 6,000 shares." According to this view, the number of shares should be 9,360, of the par value of $25 each, and the balance remaining after satisfying the stock bequests and purchase requirements should be held by the executors as a part of the residuary estate.

There are several answers to this contention. In the first place, the appellants do not dispute the fact that

all of the "business assets" were to be transferred, with a limited amount of cash. The testator clearly recognized the desirability of a paid-in surplus, and indicated his preference that the capitalization should be 6,000 shares of the par value of $25 each. The final capitalization was left largely to the discretion of the executors, and the adoption of the plan suggested and preferred by the testator cannot be termed abuse of that discretion. In the second place, the secret codicil disposes of the entire balance of stock remaining in the hands of the executors after satisfying the various bequests, purchase requirements, and purchase options, so that the end result of the capitalization contended for would merely increase the amount of treasury stock, which would represent paid-in surplus in another form and would not benefit these appellants in any event.

The plan for the transfer of assets to the corporation in exchange for its stock was a necessary prerequisite to the distribution of stock, both under the will and under the secret codicil. We think the chancellor was clearly right in holding that this part of item I of the will was not revoked by the secret codicil, which merely called for a somewhat different distribution of the stock from that set forth in the will. In the first instance, the 5,980 shares of stock pass to the executors, along with the 12 shares already held by them, and all of these shares are disposed of under the will and codicil. We find no basis for the contention that any of these shares are undisposed of, so as to pass under the residuary clause.

The chancellor held that the secret codicil revoked subsections (1), (2) and (3), but did not revoke subsection (4) of item I of the will. He held that the balance of the shares, not disposed of specifically, and not sold by the executors either under the required purchase conditions of the codicil or under the purchase option granted by subsection (4) of the will, amounting to some 666 shares, should be delivered to the corporation to be sold to employees of the corporation, or held in its treasury, as the Board of Directors may determine. In the event of

sale, he held that the proceeds should go into the treasury of the corporation, and not to the executors. This is clearly in accord with the final clause of the secret codicil quoted above.

None of the parties seem to dispute the fact that subsections (1), (2) and (3) of item I of the will are inconsistent with the provisions of the secret codicil, and were revoked by it. But it is contended in the joint brief of counsel for the corporation and its stockholders that the appellants received more than they were entitled to by the Chancellor's decree recognizing the validity of subsection (4) of item I. The decree recognized a right in the specific legatees to purchase stock, within limits, from the executors whereas, if the subsection had been revoked, such stock would pass to the corporation, to be sold by it to employees or held in the treasury as the Board of Directors might determine. Under the decree, the proceeds of shares purchased under the option would become assets of the estate rather than of the corporation.

We think it is unnecessary in this case to pass upon this contention, for even if it be conceded that the appellants receive more than they were entitled to under this construction the point is not raised by the appellants, and there are no cross-appeals. As this Court, speaking through Judge Offutt, said in the case of *Harrison v. Robinette,* 167 Md. 73, 83, 173 A. 60, 65:

"A decree may not be reversed for the benefit of one who did not appeal therefrom, even though as to him it was both erroneous and injurious. *Frederick County v. Page,* 163 Md. [619] 631, 164 A. 182; *Gordon v. Miller,* 14 Md. 204; *Lanahan v. Latrobe,* 7 Md. 268." See also *Pratt v. Johnson,* 6 Md. 397.

The rule is particularly applicable to cases of construction of wills, where a fund is distributed in a manner that does no violence to the public policy of the State, and where the parties are competent to acquiesce, so far as their own interests are concerned. *Emmanuel Church v. Safe Dep. & Tr. Co.,* 169 Md. 28, 37, 179 A. 164. Com-

pare *Matter of Horner's Will,* 237 N. Y. 489, 143 N. E. 655, and *Matter of Union Trust,* 219 N. Y. 537, 114 N. E. 1048. Of course, if it were necessary to reverse upon a point raised by the appellants, the benefit of such reversal might extend to all members of the class. See *Maryland Cas. Co. v. South Norwalk,* 4 Cir., 54 F. 2d 1032. But that is not the case here.

The final issue raised by the appellants concerns the bequest of $35,000 of stock (1,400 shares) to the estate by the secret codicil, which was followed by the direction that dividends should be paid in equal amounts to five religious or charitable corporations. We think the chancellor was correct in coupling these provisions.

The appellants contend that these provisions should be considered independently; that the bequest to "the estate" should pass to the residue, for want of a named beneficiary, and that the direction as to dividends refers to dividends on all of the stock outstanding, regardless of ownership, and is invalid. Such a construction would defeat the manifest intention to benefit the institutions named. The natural construction is to associate the dividend provision with the only shares of stock remaining in the hands of the executors.

Since the gift to the institutions is of the whole income, for an unlimited time, it amounts to a gift of the corpus. See *Cassilly v. Meyer,* 4 Md. 1; *Cooke v. Husbands,* 11 Md. 492, 506; *Johnson v. Safe Deposit & Trust Co.,* 79 Md. 18, 28 A. 890; *Ring v. Zimmerman,* 94 Md. 10, 50 A. 404; *Lyon v. Safe Deposit & Trust Co.,* 120 Md. 514, 531, 87 A. 1089. The distribution of 280 shares to each of the institutions was properly decreed.

On November 16, 1944, the appellants filed a petition in this Court praying the passage of an order to eliminate certain papers from the record to be printed, which were inserted by order of the appellees' counsel. This Court declined to pass an order at that time, but indicated that it would consider the matter in connection with the allowance of costs.

We think it was unnecessary and improper under Rule 20 of this Court to include in this record the will and two

codicils, which were printed in the previous record (No. 30, April Term 1944), and improper under Rule 12 to set out at length the charter of William Cook, Incorporated. We also think the answer of Thomas J. Murphy need not have been set out in full. Since all of these documents (occupying some 33 pages out of 105) were inserted at the request of the appellees, and over objection of the appellants, we think one-third of the cost of printing the record should be borne by the appellees.

*Decree affirmed with costs to appellees,*
*except one-third of the cost of printing*
*the record to be paid by the appellees.*