ANDREW BANKS *vs.* STATE OF MARYLAND, use of CHARLES RANSTEAD.

*Suit on Injunction Bond—Separate liability of Surety—Evidence—Damages.*

In an action against the surety on an injunction bond, (D. B. B., the principal being dead,) it was pleaded that after the death of the principal and the grant of letters testamentary, the plaintiff exhibited to the executor his claim on the injunction bond; and that the executor refused to pay it; and that after several suits on the bond had been brought by the plaintiff and dismissed, one was brought against the executor several years after he had refused to pay the claim, and that to said suit the executor had pleaded that the same had not been instituted within nine months after the refusal to pay. On demurrer it was HELD:

That the failure of the obligee to bring suit against the executor within nine months after his refusal to pay the claim, and the loss thereby of his remedy as against the estate of the principal debtor, was no bar to his maintaining an independent suit against the surety.

At the trial the plaintiff offered in evidence the record of an action of trespass brought by D. B. B. in his life-time against the present plaintiff; and prosecuted after his death by A. B., the present

Banks *vs.* State, use of Ranstead.

defendant, as his executor. The injunction restrained the plaintiff from entering upon the land mentioned in the trespass suit, and from making certain improvements and erections on it; and the averment of the declaration in this cause was that he was wholly deprived of the beneficial use and enjoyment of the said land, and of the power to prosecute certain improvements which he was making, and that he was put to great expense and loss. By the judgment in the trespass suit the title to the property was determined to be in the present plaintiff. On objection, to said record, it was HELD:

That the judgment in the trespass case would prove against everybody that D. B. B. had no right to disturb the possession of the present plaintiff, and the record was admissible as evidence of that fact.

It was further HELD:

That the granted prayers having fully instructed the jury as to their duty in the assessment of damages, a prayer of the defendant was properly rejected, which denied the plaintiff's right to recover for wages paid to employés after the service of the injunction, without reference to the question whether they were necessarily retained in the plaintiff's service or not.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First and Second Exceptions.*—Stated in the opinion of the Court.

*Third Exception.*—At the trial the plaintiff offered the following prayer:

That if the jury find from the evidence, that Daniel B. Banks, mentioned in the bond offered in evidence, did not prosecute his writ of injunction therein mentioned, to a successful termination, then they may find for the plaintiff in such damages, if any, as shall appear from the evidence that he has actually and necessarily or directly sustained by reason of the granting and serving of the said writ of injunction.

And the defendant offered the four following prayers:

1. That the plaintiff is not entitled to recover any damages for the loss of, or for injury to the piles spoken of by the witnesses, Ranstead and Phillips, which they shall find from the evidence, could have been obviated or prevented by the use of reasonable care and precautions on the part of the plaintiff.

2. That if the jury shall find from the evidence, that after the issuing of the injunction, the engineer, fireman and other employés on the dredging machine owned and operated by the plaintiff, remained idle for the space of six weeks, or thereabouts, the plaintiff is not entitled to recover, in respect of any wages which he may have paid to them for any portion of said time, during which, by the exercise of reasonable care and diligence, he could have found occupation for them, in operations upon other portions of his property.

3. That after the issuing, and service of the injunction upon the plaintiff, it was his duty to use all reasonable care and precautions, and to make all reasonable efforts to diminish and prevent loss and damage to himself and his property, by reason of such injunction; and if the jury shall find from the evidence, that upon the issuing of such injunction, and for a period of six weeks or thereabouts, thereafter, he had no employment for engineers, firemen or other employés on the dredging machine previously used and operated by him, it was his duty to discharge them, and that he is not entitled to recover any sums which he may have paid them during said period of six weeks, or thereabouts.

4. That if the jury shall find, that by reason of the injunction, the plaintiff was required to suspend and discontinue, and did suspend and discontinue his operations, as described by the witnesses, Ranstead and Phillips, then it was his duty to discharge his hands and employés, and if they shall further find, that after the service of the

injunction upon him, he did not discharge his said hands, but retained them, or any of them, in his employment, he is not entitled to recover for any sums, which he may have paid them during the pendency of said injunction.

The Court (STEWART, J.,) granted the plaintiff's prayer, and the first, second, and third prayers of the defendant, and refused the defendant's fourth prayer. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and BRYAN, J.

*John P. Poe*, for the appellant.

*J. Alexander Preston*, and *Wm. M. Merrick*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

Daniel B. Banks obtained an injunction against Charles Ranstead, but failed to prosecute the writ with effect. Andrew Banks was the only surety on the injunction bond, and is also the executor of Daniel, who is dead. A suit was brought on the bond against the surety, and several questions arose at the trial in the Court below.

It is alleged in pleading that after the death of Daniel B. Banks, and the grant of letters testamentary the plaintiff exhibited to the executor his claim on the injunction bond; and that the executor refused to pay it; and that after several suits on the bond had been brought by the plaintiff, and dismissed, one was brought against the executor in February, 1879, several years after he had refused to pay the claim; and that to said suit the executor has pleaded that the same had not been instituted within nine months after the refusal to pay. The validity of this objection is assailed by demurrer. It was necessary to bring a separate suit against the surety after the death

of the principal. It would have been error to join, as. defendants in one suit, the surety and the executor of the deceased principal obligor. If the principal had discharged the obligation of the bond, or if he had been released by the obligee, of course there could have been no action against the surety. But as the obligee was not obliged to resort to the executor of the principal debtor, but was entitled to an independent remedy against the surety, it must be irrelevant to inquire whether there were legal obstacles. in the way of the enforcement of the bond against the principal, assuming that it had not been paid, or had not been released by the obligee. If by reason of the failure to sue within a limited time, the executor of the principal obligor was at liberty to settle the estate of the deceased without regard to this claim, yet it by no means follows. that the bond was discharged. The obligation still remained in full effect, but some other remedy was necessary to enforce it. We do not consider the objection well taken.. *Zollickoffer, Ex'r vs. Seth, et al.*, 44 *Md.*, 359.

At the trial the plaintiff offered in evidence the record of an action of trespass brought by Daniel B. Banks in his life-time against the present plaintiff, and prosecuted after his death by Andrew Banks as his executor. The injunction restrained the plaintiff from entering upon the land mentioned in the trespass suit, and from making certain improvements and erections on it, and the averment of the declaration in this cause was, that he was wholly deprived of the beneficial use and enjoyment of the said land, and of the power to prosecute certain improvements, which he was making, and that he was put to great expense and loss. By the judgment in the trespass suit the title to the property was determined to be in the present plaintiff. The defendant objected to the admissibility of this evidence, but the Court admitted it, and the defendant excepted. The next exception was taken to the refusal of the Court to admit evidence to show that the title to

the property embraced in the trespass suit was in Daniel B. Banks. Both these exceptions will be considered together.

If Ranstead had a right as against the plaintiff to the possession and use of the land, he was damnified by the injunction, which restrained and prohibited him from the use and possession of it. Even if Ranstead's title were not good against any other person, the plaintiff had no right to exclude him from the possession and use of it. The controversy was distinctly between these two litigants, and the title of no other person was involved. The question in the suit on the bond is whether the injunction worked an injury to Ranstead by preventing him from doing something which Banks had no right to prohibit. If Ranstead had the legal right to withhold the possession of this land from Banks, most certainly the injunction caused an injury which is covered by the bond. Now how are the conflicting pretensions of two litigants to a tract of land to be ascertained? The ready and familiar mode is by an action at law. The trespass suit determined that Banks had no right to object to the possession of the land by Ranstead. The judgment in this case settled this question against Banks in a way that admitted of no further controversy in the future. It was then conclusive evidence that the injunction had worked a legal injury by prohibiting him from the use of it. But it is said that as Andrew Banks was not a party to the suit in his personal capacity, the record ought not to bind him personally; that it was *res inter alios acta,* and according to the familiar rule evidence only against parties and privies. The judgment is evidence against the whole world that it was rendered, and that the matters in controversy in the case were decided by it. It is the appropriate instrument appointed by the law for the purpose of proving these facts. In a controversy with Andrew Banks in respect to the title, it would not prove title in Ranstead, unless in the given case

Andrew claimed from and under Daniel B. Banks. But it would prove against everybody that Daniel B. Banks had no right to disturb the possession of Ranstead, and this is the question at the trial on which it was conclusive.

The third exception was taken to the refusal of the Court to grant defendant's fourth prayer. Before we notice this prayer, we will consider the instructions which the Court gave. On the prayer of the plaintiff, the Court instructed the jury that they might find such damages as he actually and necessarily or directly sustained by reason of the granting and serving of the writ of injunction. In the first prayer granted on the part of the defendant, they were told that they could not ve any damages for loss of, or injury to, certain piles, which could have been prevented by the use of reasonable care and precautions on he part of the plaintiff. In the second prayer granted at the instance of the defendant, the jury were told that if the engineer, firemen and other employés on the dredging machine owned and operated by the plaintiff, remained idle for the space of six weeks, or thereabouts, the plaintiff was not entitled to recover in respect of any wages, which he might have paid to them for any portion of said time, during which, by the exercise of reasonable care and diligence he could have found occupation for them in operations upon other portions of his property. In defendant's third prayer the jury were told that it was plaintiff's duty to use all reasonable care and precautions, and to make all reasonable efforts to diminish and prevent loss and damage to himself, and his property by reason of such injunction, and that if he had no employment for engineers, firemen or other employés on his dredging machine for six weeks, or thereabouts, after the issuing of the injunction, it was his duty to discharge them, and that he could not recover any sums which he may have paid them in that period. By the rejected prayer the defendant required the Court to instruct the jury that if the plaintiff retained any of his

Pennington *vs.* Phil., Wilm. & Balto. R. R. Co.

employés after the service of the injunction, he could not recover for any sums which he may have paid them during the pendency of the injunction.

We think the granted prayers fully instructed the jury as to their duty in the assessment of damages. By the rejected prayer, the right is denied to recover for wages paid to employés after the service of the injunction, without reference to the question whether they were necessarily retained in the plaintiff's service or not. The record shows that some of them were employed by the month, and he might not have been able to relieve himself of the obligations of his contracts with them before the expiration of the time for which he employed them.

We perceive no error in the rulings of the Court, and therefore affirm the judgment.

*Judgment affirmed.*