## ELIZA RING *vs.* ANNIE ZIMMERMAN ET AL.

*Construction of a Will Giving the Income from Property to Widow for Life—Sale of the Property.*

The doctrine that the gift of the income from property is a gift of the property itself, is only applied in the construction of wills when it serves to carry out the intention of the testator.

A testator directed the sale of his estate and gave to his wife "the interest of one-half of what the estate will bring when sold for her life-estate and at her death to be divided equally among my children." The real estate was sold under a decree in equity and the widow claimed a certain proportion of the proceeds of sale in lieu of her life-estate. *Held,* that it was not the intention of the testator to give to his

wife any estate in the property, but only one-half of the income thereof for life and that she is not entitled to receive a sum of money in lieu of said life-interest.

Appeal from an order of the Circuit Court for Baltimore County, (FOWLER, C. J., and BURKE, J.)

The cause was submitted to the Court on briefs by:

*Jno. J. Donaldson* and *John Donaldson Parker*, for the appellant.

1. In case of an intestacy under the Act to Direct Descents, Code, Art. 46, sec. 58–61, provision was made for an allowance to life-tenants of a cash value for their interest in case of sale.

At a still earlier day (1799, ch. 49; 1816, ch. 154; 1818, ch. 193; 1819, ch. 183; 1820, ch. 191; 1839, ch. 23; embodied in Code P. G. L., Art. 16, secs. 43, 44), a provision was made for a like allowance to a dowress in case of sale. There was, however, no statutory provision as to an allowance to life-tenants for the cash value of their interest in any case other than that of the sale of lands in case of intestacy under the Act to Direct Descents.

The Rules of the High Court of Chancery of Maryland contained one for ascertaining the value of the widow's dower (Rule 30, Alex. Ch. Pr. 270), for the purpose of carrying out the statutory provision, *but contained no like rule with regard to valuation of life-interests.*

The equity rules of the Circuit Court for Baltimore County are in exectly the same condition, viz : There is a rule for the valuation of dower interests, *but no rule whatever for the valuation of life-interests.*

2. The earliest decision bearing upon the question at issue was by CHANCELLOR KILTY in 1818. *Wells* v. *Roloson*, 1 Bland, 457, note. In this case a life-tenant of lands sold by petition of herself and her husband, stated that *they elected to take a part absolutely* instead of the whole for life, and the Chancellor (following the analogy of the chancery rule as to dower), allowed them three-sevenths of the fund absolutely. In 1826

the Court of Appeals had before it the question of the proper allowance for a legacy for life, and the cash valuation of the same. *Dorsey* v. *Smith*, 7 H. & J., 345, 367.

A fuller report of the Court's opinion will be found, however, in the opinion of CHANCELLOR BLAND in *Williams' case*, 3 Bland, 274–283. Here was a case to which neither statute nor rule applied, yet the Court disposed of it by the *analogy* of dower.

In 1828 the Court of Appeals held that the widow's right to a sum in lieu of dower in cases not provided for by statute was an equitable one, and whether the practice of allowing it was in "analogy to the Act of 1799, or upon general principles of equity," was immaterial. *Maccubbin* v. *Cromwell*, 2 H. & G., 433, 457. *Peyton* v. *Ayres*, 2 Md. Ch. 64, was the case of a valuation of and allowance for a life-annuity, and the Court there held itself bound to "apply by analogy the rule long before adopted in the Chancery Court, for the purpose of ascertaining the value of a dower interest in land, sold under its decrees."

In 1850 CHANCELLOR JOHNSON laid down again the principle that "the ancient rule of the Court, fixing the allowance to a woman in lieu of dower, applies in all cases where it becomes necessary to ascertain the present value of a life-interest." *Abercrombie* v. *Riddle*, 3 Md. Ch. 320. This case arose on the distribution of proceeds of sale (by consent of all parties concerned) of bank stock, where an allowance in lieu of her life-interest had been made by the auditor to the assignee of a life-tenant of the stock. *Krone* v. *Linville*, 31 Md. 138, 145, was a case of a sale of lands which were subject to a life-interest under a deed. The life-tenant answered consenting to a sale and agreeing to accept a cash valuation for her life-interest. This was allowed her and the allowance sustained by the Court of Appeals.

*Hoffman* v. *Rice*, 38 Md. 284, was a case of the allowance to a husband out of proceeds of wife's real estate of the valuation of his courtesy. The auditor allowed him three times the allowance to a dowress of the same age; and this allow-

ance was affirmed by the Court of Appeals. The Court in its opinion (MILLER, J.), says: " There is no difficulty as to the rule which must govern the ascertainment of this amount. The auditor states that he has calculated the value of the husband's interest under 41st Rule of Court, and makes it three-eighths of the whole sum assigned to the wife for her share of the proceeds of sale. The record does not disclose what that rule is, but it seems to be conceded by the brief of the appellant's counsel that it is the same as the Chancery Rule for the allowance in lieu of a life-interest in the whole estate, being treble the amount allowed in like cases in lieu of dower. *Williams' case*, 3 Bland, 281, 282. This has been long accepted and adopted in the chancery practice of this State as the correct method of ascertaining the present value of estates for life in land, and life-estates of all descriptions other than dower, or those embraced by some legislative provision. This rule, as we understand it to be conceded, has been followed and applied in the case before us, and in our opinion correctly so." There being no statutory provision for an allowance in lieu of life-estates (except in cases coming under the Act of Direct Descents), the Equity Rule of the Circuit Court of Baltimore City referred to is but the embodiment of the chancery doctrine and practice followed in Maryland since at least 1816.

The same doctrine was applied as to the allowance for a life-interest in *McLaughlin* v. *McLaughlin*, 80 Md. 115, 117, and *Neal* v. *Hopkins*, 87 Md. 19.

We find, therefore, a uniform course of decision from 1816 to the present, that a life-tenant, at his election, is entitled to receive in lieu of his interest, a sum calculated by analogy to the rule in dower, viz., thrice the allowance to a dowress of the same age. Nor is this doctrine peculiar to Maryland. *Houghton* v. *Hapgood*, 13 Pick. 154.

3. The suggestion was made by the Court below at the time of passing the order appealed from, that the decisions above referred to did not apply to the case at bar, *because the gift to the appellant was by will.*

Is is respectfully submitted that this is entirely untenable. The rule as laid down in *Williams' case* (*supra*), and *Hoffman* v. *Rice*, 38 Md. (*supra*), applies to *all* life-interests. The only life-estates, however, which are not the creation of deeds or wills, are dower and the husband's courtesy or statutory interest in his deceased wife's lands, and so we find that most of the cases above cited related to *conventional* life-interests. Such was the case of *Wells* v. *Roloson*, 1 Bland, 457, note. The case of *Dorsey* v. *Smith*, 7 H. & J. 345–367; s. c., 3 Bland, 284–283, was a case of a legacy for life under a *will*. *Peyton* v. *Ayres*, 2 Md. Ch. 64, was a case of a life-annuity under a *deed*. *Abercrombie* v. *Riddle*, 3 Md. Ch. 320; was of a life-interest in personalty, of course, under a deed or will. *Krone* v. *Linville*, 31 Md. 138, was of a life-estate created by deed. *Neal* v. *Hopkins*, 87 Md. 19, was also a conventional life-interest.

4. The will creates no trust whatever. The second item of the will reads as follows, viz : "I give and bequeath to my wife, Eliza Ring, the interest of one-half what the estate will bring when sold for her life-estate, and at her death to be divided equally among my children, share and share alike." Part of the fourth item dealing with the division of the estate reads as follows, viz : "You must first take out your mother's half of the real estate, the interest of which is to be for her benefit while she lives, and at her death to be equally divided among you." By the very terms of the will, then, the widow is given a life-estate in the lands, and after their sale, in the proceeds. But apart from the express terms of the will the mere gift of the income for life would pass a life-interest in the principal. *Doe* v. *Lakeman*, 2 B. & Ad. 30; *Andrew's Will*, 27 Beav. 608; *Mannox* v. *Greener*, L. R. 14 Eq. 456; *Cassilly* v. *Myers*, 4 Md. 1; *Cooke* v. *Husbands*, 11 Md. 492; *Johnson* v. *Safe Dep. Co.*, 79 Md. 23; *Canal Co.'s Case*, 83 Md. 609. Even though this principle were not conclusive, the widow, Eliza Ring, would take a life-estate by necessary implication, the remainder being to the testators's heirs at law. *Upton* v. *Lord Ferrers*, 5 Ves. 806; *Dashwood* v. *Peyton*,

18 Ves. 40; *Doe dem Driver* v. *Bowling*, 5 B. & Ald. 722, 727; *King* v. *Ringstead*, 9 B. & C., 218; *Zimmerman* v. *Hafer*, 81 Md. 355–6. And this applies as fully to personal property (where the next of kin are those to whom the bequest is to go over) as to real. *Stevens* v. *Hale*, 2 Drew & Sm. 27; *Roe dem. Bendale* v. *Summerset*, 5 Burr, 2608; *Blackwell* v. *Ball*, 1 Keen, 176; *Cock* v. *Cock*, 21 W. R. 807; *Davies* v. *Hopkins*, 2 Beav. 276; *Hudleston* v. *Gouldsburg*, 10 Beav. 547.

There being then a life-estate in the fund (whether dealt with as realty or personalty) in the appellant, Eliza Ring, and she being entitled under the unbroken practice of chancery in this State to take the valuation of the same, calculated by analogy to the rule in case of dower, what standing in a Court of Equity have those in remainder or any of them to oppose her election ?

*Boarman & Lindsay* and *Michael E. Walsh*, for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

In eighteen hundred and ninety Dennis Ring, of Baltimore County, made his will which was admitted to probate in eighteen hundred and ninety-three. It was quite inartificially drawn, but its meaning is reasonably apparent. The testator had both real and personal property. The scheme of his will contemplated the conversion of the real and personal estate into money. By the second item he gave to his wife for her life the interest or income arising from one-half of the proceeds of the sale of his property and upon the death of his wife he gave the proceeds themselves over to his children. As the controversy turns on this clause and on a part of the fourth clause the one will be transcribed and a quotation will be made from the other. The second clause is in these words : " I give and bequeath to my wife, Eliza Ring, the *the* interest of one-half what the estate will bring when sold for her life estate, and at her death to be divided equally among my chil-

dren, share and share alike." In the fourth clause the testator states that he considers that his son-in-law, David, "has got twenty-one hundred dollars." He then went on: "Add what you get for the real and personal property to the twenty-one hundred and divide in seven equal shares, one share to each person. You must first take out your mother's half of the real estate, the interest of which to *to* be for her benefit while she lives, and at her death to be equally divided among you." No other provision was made for the wife. After the death of the testator and after the probate of his will the widow did not renounce the disposition made for her and did not claim her dower right as she might have done under *sec. 292, Art. 93 of the Code.* Some doubt having arisen as to the right of the executors to make sale under the will, a bill was filed in nineteen hundred on the equity side of the Circuit Court for Baltimore County, praying for a decree for the sale of the land. In due course, after answers had been filed and after testimony had been taken, the Court determined that the will did not give the executors authority to make sale, and thereupon a decree appointing trustees to make the sale was signed. This decree was executed and a sale was made. Two audits distributing the proceeds have been stated. In account A one-half of the net proceeds was set apart for the use of the widow during her life. In account B three-tenths of one-half of the net proceeds were awarded to the widow "in lieu of her life-estate." Exceptions were filed by the widow to the allowance made to her in account A, and exceptions were filed by some of the remaindermen to the allowance made to the widow in account B. Account A was ratified and account B was rejected. From the order ratifying account A the widow, Mrs. Ring, has appealed.

From this statement of the facts it is obvious that the primary question before us is this: What estate did Mrs. Ring take under the will of her husband? It is contended on her behalf that she took a life-estate in one-half of the net proceeds of sale and a life-estate in one-half of the land, and that she is entitled to have in lieu of that life-estate a definite sum

calculated by analogy to the Chancery Rule relating to dower which definite sum is ordinarily thrice the allowance to a doweress of the same age. By such an allowance in lieu of a life-estate or a life-interest the life-tenant takes instead of a mere life-estate or life-interest a certain proportion of the proceeds arising from the sale of the property, out of which the life-estate has been carved. The contention made on behalf of the widow is resisted by the persons entitled to the fund in remainder.

It is clear if Mrs. Ring did not take under the will a life-estate or a life-interest in the property of her husband, the Chancery Rule above alluded to cannot be successfully invoked by her. Let us ascertain, then, what interest or estate she did take. In considering such a question the intention of the testator as disclosed by his will must first be consulted. Whenever that intention is clearly apparent and does not contravene some rule of property or some fixed policy of the law it must prevail. Technical words will bend their meaning to conform to the intention. Rules of interpretation are invoked to aid in discovering a testamentary intention but not to defeat it. In the absence of a contrary intention it is doubtless true as a general rule that the gift of the income of a fund or of the rents and profits of land is a gift of the fund or the land itself, because ordinarily the owner of the increment is the owner of the thing out of which the increment arises and when the increment is given the usual presumption is that it was the intention of the testator that the estate out of which the increment issues should pass. It was said by this Court in the case of *Johnson* v. *Safe Deposit and Trust Co.*, 79 Md. 23, when speaking of a devise made in the will of the late Mr. Reverdy Johnson to his daughters, " the devise of the rents and profits to the daughters was sufficient to vest in them an equitable fee in the rest and residue, and also an absolute equitable estate in the proceeds of the sale of that rest and residue as tenants in common, for such was the manifest intention of the testator ; and there is neither a limitation over nor an expression of any kind to denote a contrary or a dif-

ferent purpose." In support of that there were cited 2 *Jar. on Wills,* 403 and notes; *Watkins* v. *Weston,* 32 Beav. 238; *Cook* v. *Husbands,* 11 Md. 492; *Casilly* v. *Meyer,* 4 Md. 1; *Drusadow* v. *Wilde,* 63 Pa. St. 170. It must be remembered that this doctrine that a gift of the income is a gift of the thing out of which the income issues, is, by its explicit terms, applied to the interpretation of wills, only when it effectuates the testator's intention. If it be obvious that it was not his intention to give a life or other estate in the fund or property, then the gift of the income or rents will not be construed to be a gift of the subject out of which the income or the rents issue. It is quite clear, we think, that the testator did not intend to do more than to provide an annual income for his wife from the one-half of the net proceeds of his property. He gave the whole of those same net proceeds over after the death of his wife to his children. He thus made a distinct disposition in remainder of the very subject out of which the income was to be payable ; and in doing that he manifested a clear and unmistakable intention not to give the property itself or any part of the property to his widow for life. If the contrary view were sustained then, instead of the remainder-men getting, upon the death of the widow, the whole of this one-half of the net proceeds, as the testator declared they should, they would get the one-half less three-tenths of that one-half, and to that extent the limitation over to the children would be defeated. To be more definite, take the precise sums named in the audits as they are respectively the amounts awarded to her for life and claimed by her absolutely. The one-half set apart for the widow for life is four thousand, four hundred and seventeen dollars and eighty cents. That sum is distinctly given over after her death to the children. If, however, she should be allowed out of this, the sum of one thousand, three hundred and twenty-five dollars and thirty-four cents as claimed by her under Auditor's Account B, then the amount which the remainder-men would receive would be three thousand and ninety-two dollars and forty-six cents, and that is less than the testator intended them to have. The

allowance of the claim asserted for the widow would result in practically making a new will for the testator. It would give the widow not what the will gave her but something else; and it would give the remainder-men less than the testator intended them to have. In the face of such results we cannot say that the gift of the income from half of the proceeds of sale was intended to be a gift of the proceeds themselves. It is clear the testator intended his widow to have nothing more than the income from the proceeds of sale. That intention must be carried into effect. The ratification of Auditor's Account A does that, and the order ratifying that account must be affirmed.

*Order affirmed with costs.*

(Decided November 21st, 1901.)