FIDELITY & DEPOSIT COMPANY *v.* STATE,
USE OF GARLAND E. GROH, TRUSTEE.

STATE, USE OF GARLAND E. GROH, TRUSTEE, *v.*
FIDELITY & DEPOSIT COMPANY.
[Nos. 106, 107, October Term, 1932.]

*Decided March 1st, 1933.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Alexander Armstrong* and *John Henry Lewin,* with whom were *Armstrong, Machen & Allen* on the brief, for the Fidelity and Deposit Company.

*Harvey R. Spessard,* for Garland E. Groh, Trustee.

SLOAN, J., delivered the opinion of the Court.

Nancy Lechler died August 1st, 1890, leaving a will probated in the Orphans' Court of Washington County August 8th, 1890, whereby she disposed of her estate as follows:

"I give and devise unto Louisa M. Bell, formerly Louisa M. Funk, all the income arising from my property, real, personal and mixed, during her natural life at the death of said Louisa M. Bell, formerly Louisa M. Funk all the principal arising from the sale of all my property real, personal and mixed shall be divided as follows:

"To the child or children of said Louisa M. Bell formerly Louisa M. Funk which may be hereafter born to her each shall receive a share equally with the brothers and sisters of said Louisa M. Bell, formerly Louisa M. Funk, namely, John E. Funk, Nannie Funk, Susie Funk, Effie Funk, Dora Funk and Mrs. Alice Rowe wife of John Rowe of Waynesboro, Pa., and the share which would in this manner fall to Mrs. Alice Rowe shall be equally divided among her children, share and share alike."

The niece, Louisa M. Bell, *née* Funk, was appointed executrix without bond but with no power of sale. There is no evidence that she ever qualified. May 5th, 1911, Louisa Funk, who had, in the meantime, been divorced and resumed her maiden name, was adjudged a lunatic and the inquisition confirmed by the Circuit Court for Carroll County, and Albert J. Long of Washington County was appointed committee and trustee to take charge of and manage her property under the direction of that court. On September 16th, 1911, by Albert J. Long, their solicitor, he, as committee and trustee of Louisa M. Funk, and all of the adults who would be entitled to take the proceeds of the estate of Nancy Lechler upon the death of Louisa M. Funk, filed a bill against those entitled who were then minors, to wit, Charles Rowe and Guy Rowe, sons of Mary Alice Rowe, and Earl Funk, son of John E. Funk, deceased, and against Louisa M. Funk, lunatic, and Mary A. Rowe, administratrix *c. t. a.* of Nancy Lechler, deceased, by which it was alleged that Nancy Lechler died seised of five parcels of land in Washington County, two of which were improved by dwelling houses; that the properties were not producing as they should; and "that it would be to the advantage of all the parties concerned and having interest in said properties if said real estate was sold and the proceeds invested so as to inure to the benefit of the said Louisa M. Funk during her natural life and at her death to be divided among the parties entitled thereto." The prayers for relief were: "(1) That this honorable court may take jurisdiction in the premises. (2) That the said real estate

mentioned and described in the bill of complaint may be sold and the proceeds invested so as to inure to the benefit of Louisa M. Funk during her natural life and at her death to be divided amongst the parties entitled thereto." (3) Further relief.

A decree for the sale of the property mentioned was passed and Albert J. Long was appointed trustee. The decree required the trustee to bring into court "the money arising on such sale and the bonds or notes which may be taken for the same, to be disposed of under the direction" of the court. As required by the decree, the trustee, so appointed, gave bond with the Fidelity & Deposit Company of Maryland, appellant in No. 106, in the sum of $4,500, conditioned for the faithful performance of "the trust reposed in him by said decree, or that may be reposed in him by any future decree or order in the premises." The appellant argues that the forms of the decree and bond are the same as those common in proceedings for the partition and sale of real estate belonging to tenants in common, and therefore the duties of the trustee would end with the sale, audit, and distribution of proceeds. This is true, but it failed to show any reason why such forms of decree and bond would not be as effectual and binding on a continuing trust, such as was alleged in the bill under which the sale was decreed, and under a statute which required the court to direct the investment of the proceeds. The trustee made the sales, which were reported to the court, for the sum of $4,840, and on January 31st, 1912, they were ratified. On August 12th, 1912, the trustee filed a supplemental report to the effect that the entire purchase money had been paid. An auditor's report was filed November 19th, 1912, by which, after deducting the costs and expenses of the suit and sale, there was distributed "to Albert J. Long, Trustee, for use and benefit of Louisa M. Funk in accordance with Last Will and Testament of Nancy Lechler, deceased, $4,496.57," and the report ratified December 6th, 1912. All of these proceedings appear in No. 7357 Equity, in the Circuit Court for Washington County, and no other order was passed in that cause until March 19th, 1932, when a petition was filed for

the appointment of a new trustee to succeed Albert J. Long, who died April 1st, 1923, upon which Garland E. Groh, the equitable plaintiff in the instant case, was so appointed.

March 27th, 1913, Albert J. Long, as "committee of the person and estate of Louisa M. Funk, lunatic," filed a petition in No. 7597 Equity, in the Circuit Court for Washington County, wherein he alleged that he had in hand the sum of $4,496.57, out of the proceeds of sale made in No. 7357 Equity, distributed to him by the auditor's report in said case as "trustee for the use and benefit of the said Louisa M. Funk," and that as such committee he was "entitled to receive the income from said sum of money," and prayed an order "assuming jurisdiction of said trust fund and estate, appointing a trustee to take charge of said trust fund and estate, fixing the bond of said trustee and the compensation" of such trustee. The court thereupon passed an order wherein it said: "The said court hereby assumes jurisdiction of the trust fund and estate created by the last will and testament of Nancy Lechler, late of Washington County, Maryland, deceased, being also the same fund in the hands of Albert J. Long, trustee in Equity Cause No. 7357," and fixed the amount of the bond. Long then qualified by filing a bond in the penalty of $9,000, with his wife, Sue E. Long, and Andrew K. Coffman, as sureties. The only other thing done in No. 7597 Equity during Long's lifetime was the statement of an auditor's account filed March 21, 1916, ratified March 15th, 1917, which accounted for the corpus, $4,496.57, and interest on same from March 26th, 1913, to March 26th, 1916, $539.59 (being the interest paid by the People's National Bank on the deposit), and the distribution to "Louisa M. Funk March 20th, 1916, as per voucher filed, $492.11," the voucher filed being a receipt for the sum so distributed from Albert J. Long, committee, to himself as trustee. The record shows that the County Commissioners of Washington County paid for the maintenance of Louisa M. Funk at the State Hospital and were never repaid anything by Long or any one else. None of the parties to No. 7357 Equity were parties to No. 7597 Equity except Albert J. Long. It was

an *ex parte* proceeding, brought without notice to any interested party, and the probabilities are that they never knew anything about it until they began to seek the whereabouts of their money.

On November 16th, 1929, three of those entitled to distribution of the proceeds of sale of Nancy Lechler's real estate filed a petition in No. 7597 Equity, wherein, amongst other things, it was stated that Albert J. Long had died April 1st, 1923, and Louisa M. Funk, June 25th, 1928, and prayed the appointment of a trustee to take charge of the trust fund of which the court had assumed jurisdiction by its order of March 26th, 1913, and Garland E. Groh was so appointed and qualified. Shortly thereafter the new trustee reported that inquiry at the Nicodemus National Bank (formerly People's) had disclosed that "the only money on deposit there in the name of Albert J. Long, trustee in No. 7597 Equity, was the sum of $78.29; the sum of $2,450 having been withdrawn on April 14th, 1916, and the sum of $2,000 having been withdrawn on May 3rd, 1916," and that he was unable to locate any security for the money so withdrawn or to ascertain what disposition had been made of it. The new trustee then prayed the court for leave to enter suit on the bond in No. 7597. The chancellor held the whole proceeding in No. 7597 Equity to be a nullity so far as it attempted to make the surety in the case responsible for the proceeds of the sales made in No. 7357 Equity, and dismissed the bill on the ground that the funds never got out of No. 7357 Equity. No appeal was taken from the decree, and while it is not before this court for decision, it is necessary to discuss it, as the liability of the bond in No. 7357 Equity depends on the effect of the proceedings in No. 7597 Equity.

The devisees under Nancy Lechler's will having failed to establish liability against the surety in No. 7597 Equity, one of them filed a petition on March 19th, 1932, praying the appointment of a new trustee in No. 7357 Equity to succeed Albert J. Long, and Garland E. Groh was appointed and qualified. On the same day he filed a report of the same purport as the one filed in No. 7597 Equity, as to the dis-

appearance of the funds originally in the hands of Albert J. Long. At the same time an order was passed authorizing the new trustee to enter suit against the surety on the bond in No. 7357 Equity, and it is from the decree against it for the full amount of the bond, with interest from March 22nd, 1932, the day the bill was filed and demand made, that the appeal in No. 106 was taken. Except for the charge of insolvency of and misappropriation by Albert J. Long, the allegations of the bill of complaint are substantially what has been heretofore stated. The defendant, appellant, demurred to the bill of complaint and the demurrer was overruled. It then answered, contending that the proceedings in No. 7597 Equity had the effect of discharging the defendant from any liability as surety in No. 7357 Equity; that any portion of said fund which was appropriated and lost after the said trust fund had passed legally into the hands of Albert J. Long, trustee in No. 7597 Equity, and beyond the control and jurisdiction of said Albert J. Long, trustee in No. 7357 Equity; that the remaindermen under the will of Nancy Lechler were guilty of laches in not proceeding against the appellant in time to allow the appellant to file a claim against the estate of Albert J. Long in the Orphans' Court of Washington County, where an account was stated March 4th, 1924, distributing to creditors 9.9074 per cent. of their claims, and that, according to the contention of the appellee (plaintiff), the alleged improper payment to Albert J. Long, trustee in No. 7597 Equity, was made during March or April, 1913; "and that no claim was made against this company until on the latter part of the year 1931, and this defendant further asserts and avers that the parties interested in said fund were guilty of such laches in asserting any such claim as to disentitle them to any recovery at this time and in this case."

Nancy Lechler, by her will, gave her niece, Louisa M. Funk, the income from her entire property during her natural life, and this was all. *Ring v. Zimmerman*, 94 Md. 10, 50 A. 404. The gift did not include any interest in the property itself; that, she provided, should be converted on the death of Louisa Funk and distributed as directed by the

will. It is evident, therefore, that the only interest of Louisa Funk was in the income, and of her brothers, sisters, nephews and nieces in the corpus, and this difference in their interest is important in deciding the question of laches raised by the answer. There was no one designated to hold the property during the lifetime of Louisa Funk, and collect and disburse the income, except for the implied authority of the executrix, who does not appear to have qualified, but that difficulty could have been easily overcome, as equity will not allow a trust to fail for want of a trustee. Her brothers and sisters, nephews and nieces, did not resort to this remedy, but availed themselves, together with the committee in lunacy of Louisa M. Funk, of the remedy provided by section 243 of article 16 of the Code, which is: "In all cases when one or more persons is or are entitled to an estate for life or years or to an estate tail, fee simple, conditional, base or qualified fee, or any other particular, limited or conditional estate in lands, and any person or persons is or are entitled to a remainder or remainders, vested or contingent, or an executory devise or devises, or any other interest, vested or contingent in the same land, on application of any of the parties in interest, a court of equity may, if all the parties in being are parties to the proceeding, decree a sale or lease thereof, if it shall appear to be advantageous to the parties concerned, and shall direct the investment of the proceeds of sale or the limitations of the reversion and rent, as the case may be, so as to enure in like manner as by the original grant to the use of the same parties who would be entitled to the land sold or leased, and all such decrees, if all the persons or parties who would be entitled if the contingency had happened at the date of the decree, shall bind all persons whether in being or not, who claim * * * any interest in said land under any of the parties to said decree, or under any person from whom any of the parties to such decree claim, or from or under or by the original deed or will by which such particular, limited or conditional estates, with remainders or executory devises, were created." As said of a proceeding under this section as it stood under Acts 1862, ch. 156, before amended by Acts

1868, ch. 273, the present statute, in *Krone v. Linville,* 31 Md. 138, 145: "Such being the law, the only question in reference to the jurisdiction of the court is whether all the parties in being interested in the estate, are made parties to the proceedings, and the allegations and proof show it to be to the advantage of such parties that the sale should be made." And as said in *Denson v. Denson,* 125 Md. 357, 363, 93 A. 981, 983: "It was necessary to invoke the jurisdiction thus conferred because the title to the property to be sold was subject to contingent limitations in favor of a class of persons, some of whom might come into being after the passage of the decree and at any time prior to the death of the tenant for life. Apart from the provisions we have quoted the court had no authority to decree a sale and conveyance of the title of unborn remaindermen. *Downin v. Sprecher,* 35 Md. 474; *Downes v. Long,* 79 Md. 388, 29 A. 827; *Murphy v. Coale,* 107 Md. 209, 68 A. 615. In extending the scope of equity jurisdiction so as to provide, in proper cases, for the disposition of land having such limitations of title, the Legislature directed in explicit terms that the proceeds of sale shall be invested so as to inure to the benefit of the persons entitled in like manner as provided by the original deed or will."

The appellant construes the order assuming jurisdiction in No. 7597 Equity as warranted by the language of the order of ratification of the auditor's report in No. 7357 Equity, which concludes, "and the trustee is hereby directed to pay out the fund accordingly," and that, because those interested in the corpus did not appeal, they cannot complain of the diversion of the fund from one equity cause to another. The order of ratification is the stereotype form in use generally for any auditor's report, and does not necessarily mean that the trustee or other fiduciary must rid himself and the cause of the funds in hand, and particularly the corpus of a continuing trust. There were in the audit fifteen items of costs amounting to $343.43, which were required to be paid out of the fund, in addition to the sum of $4,496.27, distributed to "Albert J. Long, trustee, for the use and benefit of Louisa M. Funk, in accordance with last will and testament of Nancy

Lechler, deceased," which could only be paid out "accordingly," and "accordingly"? means in accordance with the terms of the will and of the statute, which provides that after the sale the court "shall direct the investment of the proceeds of sale * * * so as to inure in like manner as by the original grant to the use of the same parties who would be entitled to the land sold or used," etc. The distribution of the net proceeds of sale to Albert J. Long, trustee, had the effect of charging him with it, and, pending investment, make him responsible for its safe-keeping. The only kind of order which the court had any authority to pass was one authorizing the trustee to invest the money so charged to him, and an order, passed on an ex parte petition in another cause, to transfer to it a fund over which it already had jurisdiction, could not be defined as an investment. *Fidelity & Deposit Co. v. Freud,* 115 Md. 29, 34, 80 A. 603. There was nothing in the order of ratification of the auditor's report to put the remaindermen on notice that the fund, which they had a right to assume was protected by a responsible bond, was going to be lifted bodily out of the proceedings to which they were parties into an ex parte proceeding of which they had no notice and to which they were not parties. As stated by the chancellor, his decision was "based upon the proposition that as there is no order of court in 7357 Equity to which all parties in interest were parties, authorizing a disposition of the surplus funds in that case, as required by the decree in that case, and as contemplated by the statute under which these proceedings were brought, no order or decree of court in the *ex parte* proceedings in 7597 Equity could have the effect of transferring the funds out of the hands of the trustee in the former case into the hands of the trustee in the latter case." If there had been such an order, then, "if an error is committed in regard to the disposition of the proceeds of sale, it is subject to correction on appeal or bill of review." *Powell v. Bailey,* 138 Md. 169, 174, 113 A. 714, 716.

The appellant contends that after the disability of Louisa M. Funk, the court of equity had the authority, under section 97 of article 16, to appoint a trustee to sell and convey the

property "and apply the money arising from the sale to the purposes intended." Assuming that the court had the power to appoint a trustee under this section, there must be a vacancy to be filled, and the direction of the decedent to make the sale; but the action of the court must be in pursuance of the testator's authority. In the instant case there was no vacancy to be filled. There was a trustee holding the proceeds of sale for investment. Even if the trustee had been appointed before the proceedings in No. 7357 Equity or under the court's general equity powers (*Offutt v. Jones,* 110 Md. 240, 73 A. 629; *Jencks v. Safe Dep. & Tr. Co.,* 120 Md. 631, 87 A. 1031), and a sale had been sought by any of those interested, a good title could only have been given under the procedure provided by section 243, and in no other way. *Denson v. Denson,* 125 Md. 359, 93 A. 981.

In the opinion of this court, the procedings in No. 7357 Equity were and are unaffected by the *ex parte* proceedings in No. 7597 Equity, and the fund in the former case is distributable to those entitled under the will of Nancy Lechler, unless they have, by their laches, forfeited their right to demand it. Louisa M. Funk was the only person who had any interest in the income from the trust, and she was under disability when the money was appropriated in 1916, when withdrawn from the bank by Long, as well as when he died, and down to the day of her death, so that limitations never did begin to run against her. *Funk v. Wingert,* 134 Md. 523, 107 A. 345. The remaindermen had no interest in the fund except its preservation until the death of Louisa Funk, and were not obliged to take any action until within the period of limitations, reckoning from that event. Nothing is to be presumed against them because they did not take any action before the death of Louisa Funk. In *McShane v. Howard Bank,* 73 Md. 135, 155, 20 A. 776, 780, which was a suit at law on the bond of a bank cashier, in which the surety complained that the officials of the bank had not advised him of the cashier's defalcations after they knew, or ought to have known, of them, in the opinion of Judge McSherry it was said: "A creditor is under no obligation to be actively dili-

gent in pursuit of his principal debtor. He may forbear the prosecution of his claim and remain inactive without impairing his right to resort to the surety, particularly when his forbearance amounts to no more than mere inaction or passivity. *Sasscer v. Young,* 6 G. & J. 243; *Freaner v. Yingling,* 37 Md. 491. If the creditor is not bound to active diligence, his mere failure to voluntarily give information to the surety of the default of the principal cannot have the effect of discharging the surety." *Taylor v. State,* 73 Md. 208, 20 A. 914, 11 L. R. A. 852; 27 *A. and E. Encyc. Law* (2nd Ed.), 511.

If this suit had been at law, the period of limitations would be twelve years from the time the plaintiff would have a right to demand payment of the money payable to him. Code, art. 57, sec. 3. "Unless * * * there be alleged unusual conditions or extraordinary circumstances which would make it inequitable for the chancellor to allow the prosecution of a suit within a shorter period than that limited by the statute, a mere delay for less than the time fixed by the analogous statute of limitations will not necessarily bar the suit in equity." *Kaliopulus v. Lumm,* 155 Md. 30, 39, 141 A. 440, 445; *Demuth v. Old Town Bank,* 85 Md. 315, 326, 327, 37 A. 266. During the entire life of the trust under the decree in No. 7357 Equity, the life tenant was *non compos,* and the remaindermen were under no obligation and had no right to make demand on the appellant before June 25th, 1928, the day Louisa M. Funk died. When Albert J. Long died insolvent April 1st, 1923, the only person immediately affected was Louisa M. Funk, an incompetent, whose interest in the income bore no relation to that of the remaindermen, who had no duty to assume that their security would be affected or estate impaired by Long's death. The appellee was appointed trustee to succeed Long March 19th, 1932, within four years of Louisa Funk's death. In the meantime, for over two years he had been unsuccessfully pursuing the surety on the bond in No. 7597 Equity. This still left eight years before the appellant's claim would be outlawed by the statute of limitations and, as the chancellor only allowed

interest from the day of the demand by the appellee, the appellant has suffered little by the delay. The loss of principal has not increased since Long appropriated the fund to his use. Nor can the appellee be chargeable with the failure to assert a claim against the personal estate of Long. *Banks v. State,* 62 Md. 88, 92; 27 *A. & E. Encyc. Law* (2nd Ed.), 511.

For the reason that we are of the opinion that the appellant was never released of its obligation as surety on the bond in No. 7357 Equity, and the *cestui que trust* not guilty of laches, the decree appealed from in No. 106 should be affirmed.

The plaintiff also appealed from the decree in this case and urges as his objection that interest should have been allowed from the time Long's administrators failed to account for it after his death. The chancellor allowed interest from the date of the demand, under the authority of *State v. Wayman,* 2 G. & J. 254, 279, where the rule applied was: "When the penalty of a bond is sued for against a surety the utmost that can be recovered is the penalty, and legal interest thereon, by way of damages, *pro detentione debiti,* from the time the debt is demanded. This is the import and effect of his contract, and his accountability cannot be stretched beyond it." Against this, the appellant, in No. 107 (plaintiff) relies on the decisions in *Comegys v. State,* 10 G. & J. 175, and *Gott v. State,* 44 Md. 319. In the first, *Comegys v. State,* the trustee had in hand and was chargeable with $1,430. He gave bond in twice that sum, $2,860, the bond requiring him to invest the fund for the use of Ellen Dyckes during her life and then for her children. The trustee held the money for fifteen years and failed to invest it or pay any interest on it. The question there was whether the surety was to be held responsible only for the principal, or both principal and interest thereon, the action being for the recovery only of interest due the *cestui que trust,* the court there saying: "The trustee in this case having retained the fund claimed for so long a period of time, and furnishing no account of the same, he is to be treated as if he had actually used the fund claimed; and

so would be chargeable as a matter of right with interest." That case would have been in point if this had been a suit by Louisa Funk against Long for the recovery of income withheld from her. In *Gott v. State,* the principal had been appointed trustee to sell; one of the distributees sued for the balance of the purchase money and claimed interest thereon, and the jury was instructed that he was entitled to it on the theory that the liability of the principal was the measure of the surety's. In neither of these cases, however, was the question raised or decided as to the time from which interest might be claimed against the full penalty of the bond. The rule as stated in 16 *A. & E. Encyc. Law* (2nd Ed.), 1009, is: "In England the weight of authority appears to favor the negative rule, though there are cases allowing such recovery. In the United States a majority of the cases favor the doctrine that interest may, in certain cases, be recovered in excess of the penalty of a bond, and where interest is so given, it is, in the view of most of the courts, awarded as damages for the detention of the debt." And *State v. Wayman, supra,* is cited as the authority in this state. The surety on a trustee's bond is under no obligation to pay until demand is made, and it would be inequitable to penalize a surety for offenses committed back of that event.

When demand is made on a trustee by one who has a right to make it, it then becomes a debt due and payable, and the lawful rate of interest is the prescribed penalty for the delay. When the interest is due from, or chargeable to, the principal, the bond is not liable beyond the penalty of the bond and it is to such a case that the *Comegys* and *Gott* cases apply. The chancellor was correct in his allowance of interest on the penalty of the bond from the date of demand.

*Decree affirmed in Nos. 106 and 107; each party to pay one-half the costs.*